People ex rel. Michael Lynch, Appellee, v. City of Chicago et al., Appellants.

Gen. No. 36,383.

 Opinion filed June 30; 1933.
Rehearing denied July 11, 1933.

WILLIAM H. SEXTON, Corporation Counsel, and
FRANCIS J. VURPILLAT, Assistant Corporation Counsel,
for appellants.

MICHAEL F. RYAN, for appellee.

MR. JUSTICE GRIDLEY delivered the opinion of the
court.

On July 10, 1931, Michael Lynch, a police patrolman,
filed his petition for a writ of mandamus against the
City of Chicago, its mayor, its commissioner of police,
certain other of its officials and its three civil service
commissioners. Defendants filed a general and spe-
cial demurrer. Subsequently the petition was amend-
ed by the striking out of certain words so that its
prayer was for the issuance of the writ commanding
defendants "to forthwith place the name of petitioner
upon the roster of the department of police, and upon
the department of police pay roll, as a sergeant, to the
end that petitioner may at once enter upon the duties
of a sergeant in said department of police, subject to
the laws, rules and ordinances pertaining to the office
of sergeant." On August 8, 1932, after hearing argu-
ments upon the demurrer, the court overruled it and,
defendants electing to stand by the demurrer, entered
the judgment order appealed from, wherein the court
adjudged that a peremptory writ of mandamus issue,

directed to the three civil service commissioners (naming them), and commanding them "to forthwith certify *from the eligible list posted December 24, 1927*, by the then civil service commission of the City of Chicago, the name of Michael J. Lynch, to James P. Allman, commissioner of police of the City of Chicago, or his successor in office, for the office or position of sergeant in the classified service of the department of police, . . . and commanding said Allman, as commissioner of police, "to appoint and assign Michael J. Lynch . . . to duty as a sergeant of police," in said classified service (Grade 4, Class S, Branch IV) and commanding all the defendants in their official capacities "to recognize the petitioner herein, Michael J. Lynch, as a sergeant of police" in said classified service and "to forthwith place the name of Michael J. Lynch as a sergeant of police upon the roster and pay roll" of said department of police, etc.

The petition, divided into 24 paragraphs, is long and repetitious. The allegations in paragraphs 1 to 10, inclusive, concern petitioner's position as a patrolman. As to these allegations no point is made by defendants, but the issue is as to the sufficiency of the well-pleaded facts, alleged in the other paragraphs of the petition, to establish petitioner's right to the relief prayed. The allegations in paragraphs 11 to 23 inclusive, are in substance as follows:

(11) That pursuant to due notice a promotional examination, to create an eligible list of candidates for the position of sergeant of police, was held on January 29, 1927; that petitioner and others took the examination; that thereafter "the eligible list of the successful candidates . . . *was posted on December 24, 1927*, by the then civil service commissioners"; that petitioner's name appeared "as No. 87 on the original list as posted"; that he "passed with an average of 77.19"; that "his *present* standing, after certifications from the list, is No. 7 *on said list*"; that "*on*

*January 2, 1930,* said list *was canceled"*; that certifications for promotions were made from the list from time to time, and 100 patrolmen were certified; that many of them, claiming "military preference, who were not entitled to same," were certified because of "military preference"; that their averages "were *wrongfully, illegally and arbitrarily changed"* by the then commissioner of police, and certified by the civil service commissioners, in violation of the civil service law; and that "more than 14, illegally, and without warrant of the civil service law," were certified and appointed sergeants of police, "in violation of the rights of your petitioner."

(12) That there were more than 14 vacancies in the position of sergeant of police "for many months prior to January 2, 1930, when said list was canceled."

(13) That although petitioner successfully passed the competitive and promotional examination for sergeant, and although his name appeared on said eligible list on December 24, 1927, the commissioner of police, at the time the list was "taken down" on January 2, 1930, and for a long time prior thereto, "refused to notify the commissioners of the vacancies existing for the promotional office of sergeant," and said commissioners "refused to certify the petitioner's name, in the order in which it should have been certified, to the commissioner of police for appointment as sergeant"; that the refusals were made "notwithstanding the facts that 590 sergeants were appropriated for in the annual appropriation bill of the city for the year 1929, and 585 sergeants for the year 1930, and 572 sergeants for the year 1931"; that there were more than 14 vacancies in the rank of sergeant in the classified service; and that it became the duty of the commissioner of police to notify the civil service commissioners of, and the duty of said commissioners to

certify from the top of said eligible list, those eligible for appointment as sergeants, including petitioner.

(14) That under the Civil Service Law for cities and the rules of the civil service commission of Chicago, it was the duty of said commissioner of police to notify the commission of the vacancies existing in the position of sergeant, and also the duty of the commission to certify to the commissioner of police, "the name and address of *the candidate* standing highest upon the register"; that notwithstanding these duties, said officials, "arbitrarily and without due regard to law, and in violation thereof and the rights of your petitioner, refused to comply with the provisions of the Civil Service Law in this respect"; and that because thereof petitioner "was not promoted to the rank of sergeant," as he was entitled to be.

(15) That more than 1,900 men took said examination, and 300 successfully passed the same; that from said list "the first 78 were certified and promoted to the rank of sergeant"; that after these certifications were made "the standing on said list was as follows:" (Here follows a long list with petitioner's name and address as number 8 from the top); that "more than 14, exclusive of said 78, were illegally certified and appointed"; that when said list was "taken down" as aforesaid, and when this petition was filed, "more than 14 other vacancies existed and now exist in the rank of sergeant"; that it was the duty of the commissioner of police to notify the commission "of the vacancies existing," and the duty of the commission "to certify from said list 14 names of those standing highest on said eligible register for promotion to sergeant"; that no change has been made in the status of the situation and said vacancies still exist; that no other certifications or promotions have been made "from the *present* eligible register and from any other eligible register of sergeants"; that an order of court,

ordering the commission to certify and the commissioner of police to appoint petitioner to the rank of sergeant, "will not disarrange the public service, but on the contrary will promote justice, reward merit and conform to the spirit and letter of the Civil Service Law."

(16) That immediately prior to January 2, 1930 (when the first eligible list was canceled as alleged in paragraph 11) "the first 14 of the successful candidates on said eligible list for the promotional rank of sergeant" . . . are as follows: (Here are set forth a list of 14, showing their respective "averages," their relative standings on the list on December 24, 1927, and their standings on January 2, 1930. Petitioner is No. 7 on this list.)

(17) That the commission "wrongfully, illegally and arbitrarily *changed* the eligible list of the successful candidates that took said promotional examination for sergeant of police, . . . and caused the *averages* of more than 14 patrolmen, who had passed said examination with an average lower than petitioner's and whose places on said list were lower than petitioner's, to be wrongfully, illegally and arbitrarily changed, and caused more than 14 of said patrolmen to be given an average higher than the average given to them originally and an average higher than that given to petitioner, and did *wrongfully, illegally and arbitrarily* place their names upon said list before petitioner's name, . . . and illegally appointed and illegally promoted to the rank of sergeant . . . 14 of said patrolmen, whose names were below that of your petitioner on said eligible list."

(18) That after the list had been posted on December 24, 1927, the civil service commissioners "did *then and there* wrongfully, illegally and arbitrarily cause said list to be changed, and did *then and there* wrongfully, illegally and arbitrarily . . . give to 14 pa-

trolmen, whose general averages in said examination and whose places upon said list were lower than that of your petitioner, an average higher than that of your petitioner, and they were illegally promoted to the rank of sergeant . . . in violation of petitioner's rights, upon the ruling of said commissioners that said 14 patrolmen were entitled to preference because of 'Military Preference,' . . . who were not legally entitled to said 'Military Preference' because of the fact that they had none.''

(19) (In this paragraph, reference being again made to the claimed refusal of the commissioner of police to notify the commission of existing vacancies and the claimed refusal of the commission to certify the names of those standing highest on the list for the promotional appointment as sergeants, it is alleged that such refusals were ''fraudulent and contrary to law,'' but no facts are stated showing in what the fraud consisted.)

(20) That petitioner ''has *continuously made demands,* from December 24, 1927, up to the time of filing this petition, that he be certified and appointed to the office of sergeant in the classified service''; that ''upon each and every occasion'' of making demand, he ''has been *promised* by the City of Chicago, through its mayor, commissioner of police and civil service commissioners, that he would be appointed to said office''; that he ''relied upon the promises''; that shortly prior to the filing of the present petition he ''did again demand'' of the city, through said officials, that he receive said appointment; that ''then, for the first time,'' said city, through said officials ''did refuse to appoint petitioner to the office of sergeant''; that ''a *new examination* was held and *the list posted in March, 1931*''; that ''no certificates have been made from said eligible list''; that the vacancies that existed in the rank of sergeant ''still exist''; that ''there are

14 vacancies in the office of sergeant of police . . . . which have not been filled and which should have been filled from the list in force and effect from December 24, 1927 to January 2, 1930''; that had the commissioner of police and the commission complied with the statutes, ''petitioner would have been certified and appointed to the rank of sergeant . . . prior to January 2, 1930''; that no change has been made in the situation since said list was canceled and ''said vacancies still exist and have not been filled''; and that ''no certifications or appointments have been made from said eligible list posted in March, 1931, for the rank of sergeant.''

(21) (In this paragraph is the allegation that petitioner ''is now, and was during all the time that said list was in force and effect, a police patrolman on active duty'' in the police department of the city.)

(22) That ''it was the *policy* of the administration, to wit, the then mayor, commissioner of police and civil service commissioners, to refrain from filling the vacancies occurring after February 1, 1930''; that because thereof no change has been made in the existing status, ''except the illegal promotion of those on said eligible list, whose places and averages were lower than that of petitioner''; that ''no new promotions have been made from the *new* eligible list''; and that ''14 vacancies still exist in the office of sergeant, and did exist prior to December 24, 1929, because of the fact that said office was appropriated for in the annual appropriation bills of the city council, as hereinbefore described.''

(23) That petitioner ''has made demand'' on the city and other defendants that his name be placed on the police pay roll as a sergeant, but that the demand has been refused.

The well-pleaded allegations of fact of the petition (as distinguished from conclusions not admitted by

the demurrer) are, in substance, that for a long period of time prior to January, 1927, petitioner had been acting as a police patrolman in the classified service of the police department of the city; that on January 29, 1927, he took a promotional examination, which he had a right to take, for the position of sergeant of police; that he successfully passed the examination and his name was placed on the eligible list or register, which "was posted on December 24, 1927"; that his name was "No. 87" on the list; that more than two years after the list had been posted, without his having received the appointment as a sergeant, to wit, *"on January 2, 1930,* said list *was canceled"*; that at the time of such cancellation petitioner's name was "No. 7" of the candidates whose names had not been certified for appointment; that at said time there existed, and still exists, "14 vacancies" in the position of sergeant in the classified service of the city; that petitioner's demands to be appointed as a sergeant to *one* of the vacancies had been refused; that in 1931 a "new examination" for the position of sergeant was had (which examination petitioner did not take); that the new list "was posted in March, 1931"; and that prior to the time of the filing of this petition (July 10, 1931) no certifications had been made from the new list and said 14 vacancies still existed. In addition to the above allegations of fact there are statements, many times repeated, to the effect that prior to the cancellation of the old eligible list on January 2, 1930, the civil service commission "wrongfully, illegally and arbitrarily" changed that list so as to place the names of others thereon, and whose stated grades were lower than petitioner's grade, ahead of petitioner's name; that said commission "wrongfully, illegally and arbitrarily" gave "military preference" to certain of the persons, "who were not entitled to same," and placed them on said list ahead of petitioner and afterward certified

them to the positions of sergeants; and that, although there existed and continued to exist the 14 vacancies, the commission "wrongfully, illegally and arbitrarily" refused to certify petitioner to *one* of said vacancies. The *facts* as to how said list was changed, or as to how and to whom military preference was given when it should not have been given, are not disclosed. We think that the statements, last above mentioned, should be considered as mere conclusions of petitioner, and not proper allegations showing a clear right to the writ of mandamus as prayed. (12 Ency. Pl. & Pr. 1033; *Stott v. City of Chicago*, 205 Ill. 281, 291; *LaValle v. Soucy*, 96 Ill. 467, 469; *People v. Town of Mount Morris*, 145 Ill. 427, 432; *People v. Webb*, 256 Ill. 364, 373; *McDevitt v. Finn*, 248 Ill. App. 339, 343.)

And we are of the opinion that the well-pleaded facts, as alleged in the petition, are not sufficient to warrant the court's judgment, which commands the present civil service commissioners "to forthwith certify *from the eligible list posted December 24, 1927,* . . . the name of Michael J. Lynch . . . for the office or position of sergeant of police," etc. In the 11th paragraph of the petition it is alleged that the eligible list, as posted on said date, "was canceled on January 2, 1930" (i. e., more than two years *after* it was posted, and more than a year *before* petitioner filed the present petition). Because of a provision contained in section 10 of the "Act to regulate the civil service of cities" (Cahill's St. ch. 24, ¶ 694) it is apparent that said cancellation of the list was lawful and proper. The provision is: "Said commission may strike off names of candidates from the register after they have remained thereon more than two years." We think that when said old eligible list was canceled it became *functus officio,* that is, it "had become of no virtue whatsoever" (2 Bouvier's Dict., Rawle's 3rd ed., p. 1323), and petitioner's name, not being on any

list, could not legally be certified by the commission for the position of sergeant. Furthermore, inasmuch as the position of sergeant of police is a promotional one, it is governed by section 9 of said act, Cahill's St. ch. 24, ¶ 693, one of the provisions of which is that "it shall be the duty of the commission to submit to the appointing power the names *of not more than three* applicants *for each promotion* having the highest rating." This is authority for the commission to submit the names of *three* applicants for each promotion, so as to give a discretion to the appointing power as to which of the three shall be appointed. (See *McDevitt v. Finn, supra.*) And, clearly, under these provisions of the section, the commission should not be compelled to certify the name of but *one.* Furthermore, we are of the opinion that the petition shows on its face such laches on petitioner's part as is a bar to the relief as prayed. If he was improperly and unlawfully displaced from his proper position on the eligible list, by the advancement and certification of others lower on the list than he, he should have taken steps by appropriate suit before said list became more than two years old and was canceled on January 2, 1930. He does not show by proper allegations any excuse for the delay. It is decided in this State that in a mandamus proceeding the defense of laches, appearing on the face of the petition, may be raised by demurrer. (*Schultheis v. City of Chicago,* 240 Ill. 167, 170; *Kenneally v. City of Chicago,* 220 Ill. 485, 502, 503.)

For the reasons indicated the judgment of the superior court of August 8, 1932, appealed from, is reversed and the cause is remanded with directions to the court to sustain defendants' demurrer, and for further proceedings not inconsistent with the views herein expressed.

*Reversed and remanded with directions.*

SULLIVAN, P. J., and SCANLAN, J., concur.