People of the State of Illinois ex rel. Gertrude L. Killeen et al., Appellants, v. Joseph P. Geary et al., Appellees.

Gen. No. 42,144.

Opinion filed January 25, 1943.   Rehearing denied March 22, 1943.

Michael F. Ryan, of Chicago, for certain appellant.

R. E. Blackwood, of Chicago, for certain other appellant.

Barnet Hodes, Corporation Counsel, for certain appellees; James A. Velde and L. Louis Karton, both of Chicago, of counsel.

Poppenhusen, Johnston, Thompson & Raymond, of Chicago, for certain other appellees; Henry J. Brandt, Abraham Greenspahn and Adolf Loeb, all of Chicago, of counsel.

Mr. Justice O'Connor delivered the opinion of the court.

December 5, 1940, Gertrude L. Killeen filed her petition praying that a writ of mandamus issue against the Civil Service Commissioners and their Chief Examiner and Secretary, to compel them to cancel "the eligible register created by" an original and promotional examination "for the filling of vacancies exist-

ing in the position of supervising field nurse in the classified service of the Board of Health of the City of Chicago'' and to hold within 30 days a promotional examination for the filling of vacancies in the position of supervising field nurse, and to post the list of eligibles within 90 days after such examination. January 3, 1941, an order was entered giving Leda Speiser leave to intervene as a party plaintiff and to file her petition within 10 days, which she accordingly did January 13, 1941. The petition, defendants' motion to strike and other pleadings are exceedingly lengthy, which we think wholly unnecessary. *O'Brien v. Frazier,* 228 Ill. App. 118; *People ex rel. Richards v. Allman,* 289 Ill. App. 586. After the pleadings were settled the case was tried by the court without a jury. The court found in favor of defendants, dismissed the suit and plaintiffs appeal.

There is substantially no dispute in the evidence, most of the material facts being stipulated, from which it appears that both plaintiffs, Gertrude L. Killeen and Leda Speiser are field nurses in the classified service of the Board of Health of Chicago and have held such positions for many years. That prior to September 21, 1938, the Civil Service Commissioners issued a call for certain examinations in which appeared the announcement for examinations numbers 5052 and 5053. One was designated ''original'' and the other ''promotional'' and both were to be held for the position of supervising field nurse. The announcement said the ''promotional'' examinations could be taken only by civil service field nurses who are in the next lower grade or rank to the supervising field nurses and who were then employed by the Health Department. The ''original'' examination, the announcement said, might be taken by anyone holding a certificate of registration as a registered nurse under the Illinois Nursing Act. (Par. 23, § 1 *et seq.,* ch. 91, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 91.01 *et seq.*].) Notices were given by

the commissioners as required, of the time and place of holding each of the two examinations. September 21, 1938, the examinations were held at the same time and place in the same room, and the questions were identical, but the marks and gradings were not the same. In the "promotional" they were "Duties, 5," "Reports, 2," "Efficiency, 2," "Seniority, 1," while in the one designated "original" the markings were "Special Subject, 5," "Report, 2," and "Experience, 3." Each of these methods of marking was specified in the announcement made by the commissioners for the holding of the examinations. Forty-six out of 132 field nurses who were civil service employees of the Health Department took the "promotional" examination and 6 passed; 65 persons took the examination "original" and 4 passed. The list of those 10 who passed the examinations was not posted by the commissioners until May 17, 1940. There were 11 vacancies in the position of supervising field nurse and from time to time after the posting of the lists, appointments were made to fill the vacancies, those 6 women nurses who passed the "promotional" examination being appointed first and afterward the 4 persons who passed the "original" examination were appointed to 4 vacancies, leaving one of the vacancies still unfilled.

Plaintiff, Gertrude L. Killeen, testified that although she knew the promotional examination was to be held and had an opportunity to take it, and that no one prevented her from taking it, she did not do so "Because it was not confined to nurses of the lower grade." Upon objection the court struck the answer. Plaintiff, Leda Speiser, took the promotional examination but failed to pass.

As above stated, the list of those persons passing the two examinations was filed May 17, 1940, by the commissioners and 4 days thereafter, May 21, the attorney for Gertrude L. Killeen, filed a written protest with defendants, the commissioners and their secretary and

chief examiner, which stated that he represented a large group of field nurses, and protested against the posting on May 17, 1940, of the original registers created by the two examinations because the two examinations were held simultaneously September 21, 1938. That there was in reality but one examination and "it was not held under the provisions of Section 9 of the City Civil Service Act and Rule V of the Rules of the Civil Service Commission." The attorney demanded a cancellation of the lists and that a promotional examination be held and limited to the field nurses who were in the next lower grade to the supervising nurses. Counsel for plaintiffs say, "This protest and demand was ignored."

The record further discloses that the examiners who marked the papers of those taking the examinations were Helen Finan, who was employed by the Board of Health as Superintendent of Nurses at the Contagious Diseases Hospital, and Eloise Phelps, who was employed by the Board of Health as Superintendent of Nurses. Both of these were affiliated with the Democratic Party and the third examiner was Miss McCall, who prepared some of the questions but at the time of the trial had resigned.

Plaintiffs' theory of the case, as stated by their counsel, is that under the provisions of section 9 of the City Civil Service Act (par. 47, § 9, ch. 24½, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 23.048]) "the examination for the filling of eleven vacancies in the promotional position of supervising field nurse . . . should have been promotional only, limited and restricted to and competitive among field nurses in the classified service serving in the next lower rank or grade," and that the commissioners were without authority to call simultaneously the "original" examination since there was a large number of persons in the next lower grade or rank desirous or willing to participate in the "promotional" examination. And counsel for plaintiffs'

further position is that the commissioners violated section 6, of the City Civil Service Act (par. 44, § 6, ch. 24½, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 23.045]), for the reason that the three examiners were members of the same political party.

On the other side, defendants' theory as stated by their counsel is that "Section 9 of the Civil Service law imposes a duty upon the Civil Service Commission to fill vacancies in the classified service by promotional examinations limited to those persons in the classified service next lower in rank or grade to the positions to be filled; that the Commission complied with the law by calling promotional examination 5053, which was limited to those persons in the classified service next below the grade or rank of supervising field nurse, . . . and by appointing to such positions the successful candidates of the promotional examination; that there is nothing in the law prohibiting the Commission from calling and holding an original examination simultaneously with a promotional examination as long as the persons who pass the promotional examination are first appointed to the vacant positions."

Section 9 is as follows: "The commission shall, by its rules, provide for promotions in such classified service, on the basis of ascertained merit and seniority in service and examination and shall provide, in all cases where it is practicable, that vacancies shall be filled by promotion. All examinations for promotion shall be competitive among such members of the next lower rank as desire to submit themselves to such examination; and it shall be the duty of the commission to submit to the appointing power the names of not more than three applicants for each promotion having the highest rating. The method of examination, and the rules governing the same and the method of certifying, shall be the same as provided for applicants for original appointment."

Section 2, of Rule V, of the Civil Service Commission is as follows: "Sec. 2, Eligibility: The Commis-

sion in its notices of examination shall define lines of eligibility for promotion, specifying by title of position the partcular rank or grade entitled to take such promotion examination. Promotion examinations shall be held when the next lower rank, whether in the same or a lower grade, as determined by the Commission, contains two or more eligible persons desirous of taking examination. Should not more than one eligible candidate register, or should all candidates fail to pass, an original entrance examination shall then be held. No persons shall be eligible for promotion from a position in any rank or grade to fill a vacancy in the next higher rank unless the position in which he is employed at the time of examination is in the same branch and class of service as the position to be filled and unless such person is at the time of examination actually employed in such branch and class, or is on leave of absence, or is eligible for reinstatement.''

Counsel for plaintiffs say that section 9 requires the commission by its rules to provide for promotions "in all cases where it is practicable, that vacancies shall be filled by promotion. It shall thereupon by rule fix lines of promotion.'' That the commission has done this by adopting § 2 of Rule V, which provides that ''Promotion examinations shall be held when the next lower rank, . . . contains two or more eligible persons desirous of taking examination. Should not more than one eligible candidate register, or should all candidates fail to pass, an original entrance examination shall then be held.'' And it is argued this rule was not followed by the commissioners in the instant case because, as we understand the argument of counsel, there were 132 persons who were eligible to take the promotional examination and 46 of those did take it.

While the rule was not literally followed, we think it was not violated even if we assume there were two examinations held, one designated ''original'' and the other ''promotional'' for the reason that proper notice

was given that a promotional examination would be held and all of those persons who were eligible to take such examination, and desired to do so, were permitted to take the examination and those that passed the promotional examination were certified and appointed to the vacancies. It was not until after those who had successfully passed the promotional examination and were appointed to the position of supervising nurse that the others who took and passed the "original" examination were appointed to some of the remaining vacancies.

Plaintiff, Gertrude L. Killeen, was given an opportunity to take the promotional examination but she saw fit not to do so and we think she ought not now complain and say that another promotional examination be held. And with greater reason, we think, should Leda Speiser not be permitted to complain because she took the promotional examination and failed to pass. Neither plaintiffs, nor any one else, so far as we are advised, have at any time made any complaint that the questions were improper or that the grading of the papers of those who took the examination was in any way contrary to what the law required. Moreover, we might add that from 1903 to the present time under all administrations of the city and under all Civil Service Commissioners, original and promotional examinations have been held concurrently by the Civil Service Commission covering practically every civil service position in the city. The uncontradicted evidence of this fact is in the record that such examinations were concurrently held (about 500) and so far as the record discloses, no objection was ever made to this method until the examinations were held which are involved in the instant case. This fact, of course, is not binding on the court but only goes to show that all commissioners for about 40 years have construed the rules as they were construed by the commissioners in the instant case.

Counsel for plaintiffs to sustain their contention cite a number of authorities and reliance is chiefly placed on the case of *People v. Errant,* 229 Ill. 56, where a writ of mandamus was sought to compel the Civil Service Commissioners to hold a promotional examination for the position of assistant superintendent of streets in charge of streets and alley cleaning. In that case a number of questions were involved, one of which was whether ward superintendents were in the next grade or rank to the assistant superintendent of streets in charge of streets and alley cleaning. And another question for decision was whether the commissioners' determination, that it was not practicable to fill the position, was final and binding. There being a vacancy, a temporary appointment was made and renewed from time to time "until finally a general examination was held, and it happened that the same man who had been holding under temporary appointments passed the examination by a slightly better grade than his competitors, and hence he was then appointed as a result of the examination." In that case there was no promotional examination held but only the general examination. The court held this was not a compliance with the law and a writ of mandamus was awarded and the holding of the promotional examination was ordered. In that case it was further contended that the man who passed the general examination and received the appointment should have been made a party. The court in passing on the question said: "We fail to see how he is interested in the holding of the examination. None of the applicants may make the required grade on examination, and should they all fail the present incumbent could not be disturbed."

A further point is made by counsel for plaintiffs that the three persons appointed in the instant case to conduct the examination were all members of the same political party, contrary to the provisions of section 6 of

the City Civil Service Act, which provides the Civil Service Commission shall control all examinations and they may designate a suitable number of persons to be examiners and that "the examiners at an examination shall not all be members of the same political party."

Counsel say that the testimony of both Eloise Phelps and Helen Finan shows that they were affiliated with the Democratic Party, that they graded and scored the papers and that while Mr. Osborne, Secretary of the Civil Service Commission and a defendant, testified that the other examiner, Miss McCall, was a Republican she had nothing to do with the marking of the papers. And that after the case was heard and when plaintiffs' motion for a new trial came on for hearing, counsel for plaintiffs offered to prove that Miss McCall was a Democrat.

On the other side, counsel for defendants say that the requirement of law that not all examiners shall be members of the same political party was strictly complied with; that there were three examiners, Phelps, Finan and McCall, appointed by the commission. That Finan and Phelps were both called as court witnesses and testified that they were affiliated with the Democratic Party and that Miss McCall, who was beyond the jurisdiction of the court, did not appear but Osborne, the Chief Examiner, testified Miss McCall was a Republican. We think it was a matter of discretion with the trial judge whether or not he would permit further proof to be offered by plaintiffs on the motion for a new trial.

Counsel for defendants contend that the judgment is right and should be affirmed for the reason that "Plaintiffs were guilty of *laches* in not bringing their petition for mandamus until twenty months after the purported void examination had been given." We think there is merit in this contention. As above stated, the record discloses that prior to September 21, 1938, notice that the examinations would be held on

September 21, was given and plaintiffs knew all about it from that time. The examinations were held at that time and May 17, 1940, the list of those who successfully passed was posted. Four days afterward, counsel for plaintiff Gertrude L. Killeen, protested but nothing further was done until the petition was filed nearly 7 months afterward, December 5, 1940.

In *People ex rel. Richards v. Allman,* 289 Ill. App. 586, we said: "We are further of opinion that the court properly sustained defendants' motion to strike the several petitions, amendments, and counterclaim, on the ground that the men seeking the writs were guilty of gross *laches.* It is the law that where one seeks a writ of mandamus in a case such as the one at bar, he must not only act promptly in beginning his action but he must also see that it is expeditiously prosecuted as well. *People ex rel. Lynch v. City of Chicago,* 271 Ill. App. 360, and *People ex rel. Jahn v. City of Chicago,* 279 Ill. App. 624."

No sufficient reason appears why plaintiffs could not, within a reasonable time after the notice was given that the examinations would be held, have taken action to stop the holding of the examinations and to compel the holding of a promotional examination as they now contend should have been done.

The judgment of the circuit court of Cook county is affirmed.

*Judgment affirmed.*

MATCHETT, P. J., and McSURELY, J., concur.