UNITED STATES of America, Plaintiff,

v.

CITY OF CHICAGO et al., Defendants.

Renault ROBINSON et al., Plaintiffs,

v.

James B. CONLISK, Jr., et al., Defendants.

Tadeo Robert CAMACHO et al., Plaintiffs,

v.

James B. CONLISK, Jr., et al., Defendants.

Renault ROBINSON et al., Plaintiffs,

v.

William E. SIMON et al., Defendants.

Nos. 73 C 2080, 70 C 2220, 73 C 1252 and 75 C 79.

United States District Court, N. D. Illinois, E. D.

June 17, 1977.

William R. Quinlan, Corp. Counsel, Earl L. Neal (Special Counsel), Chicago, Ill., for City of Chicago.

Donald Pailen, U. S. Dept. of Justice, Washington, D. C., Ilana Diamond Rovner, Chicago, Ill., for U. S. A.

Michael L. Meyer, Schiff, Hardin & Waite, Richard M. Gutman, Citizens Alert, Chicago, Ill., for Carolyn Burauer et al.

Norman J. Barry, Rothschild, Barry & Myers, Chicago, Ill., for Arado intervenors.

Wayne B. Giampietro, Chicago, Ill., for Isakson intervenors.

Thomas A. Gottschalk, Frank Cicero, Kirkland & Ellis, Chicago, Ill., for Robinson plaintiffs.

## MEMORANDUM DECISION ON REMAND

MARSHALL, District Judge.

When the final decree of February 2, 1976 was entered in these consolidated actions, the City of Chicago had not completed the development of its new methods for selecting police officers. Accordingly, subject to prescribed hiring ratios, we authorized the City, *at its election*, to continue to appoint officers from the eligibility lists based upon the invalid 1971 Patrolman's Examination and the 1972 Policewoman's/Matron's Examination. Final Decree, I, 8(b), 411 F.Supp. 218 at 249, D.C.

On appeal from that portion of the decree which granted the City the election to use the 1971 and 1972 lists, the Isakson intervening defendants, who hold places on the 1971 patrolman's eligibility list, urged that we had "illegally deprived them of vested rights by permitting the City, at its option, to disregard the 1971 roster in making new appointments. . . ." The Court of Appeals agreed and vacated the election aspect of the decree. *United States of America, et al. v. City of Chicago, et al.*, 549 F.2d 415, 437 (7 Cir. 1977).

In reaching its conclusion the Court of Appeals noted that subsequent to the entry of the final decree, the City had developed a police officer roster based upon the new methods of selection. Accordingly, it "decline[d] to rule on the precedence of the 1971 examination vis-à-vis subsequent examinations" concluding that it would be "inappropriate for [it] . . . to decide the difficult issues of state law that may arise in determining the rights of persons on the 1971 roster in light of the existence of a new roster derived from the 1975 examination" and "limit[ed] [its] holding . .

to the statement that the City must utilize the results of some examination given pursuant to the Illinois law in appointing patrol officers." 549 F.2d at 438.

There are now pending on remand the motions of the Isakson intervening defendants and the Burauer intervening plaintiffs, who hold places on the 1972 Policewoman's/Matron's list, to compel the City to hire white males from the 1971 list and females from the 1972 list. For the reasons hereinafter stated, the motions are denied.

■ We have already expressed our approval of the nondiscriminatory results which the new methods of selection have produced. As a consequence of those results we have, for the present, suspended the hiring ratios which were prescribed in the final decree. 420 F.Supp. 733, D.C. Virtually all of the impounded revenue sharing funds have been released and the balance shortly will be. The City has acquiesced in the judgments of this court and the Court of Appeals and is now well along the road toward the development of nondiscriminatory methods of selecting police officers.

These methods of selection have been developed under the guidance of Professor Robert Guion of Bowling Green University who testified at an evidentiary hearing held on the pending motions, that the new roster provides sample populations by which the City may satisfy the guidelines of Title VII for validated test procedures. He has also testified that to suspend hiring from the new roster or mix candidates from the 1971 and 1972 rosters with candidates from the new roster would require him to close down his test development program and leave him with an inadequate sample from which to demonstrate test validity, especially on a differential basis. EEOC Guidelines require proof of the differential validity. 29 C.F.R. § 1607.5(b)(5). And, according to Professor Guion, differential validity comparisons will enable the City to select the most valid, least discriminatory battery of selection devices for future use. Therefore, we conclude that it is preferable that the City be permitted to proceed along the path it is pursuing.

■ Nor do the new methods of selection contravene Illinois law. The beginning point is a written examination. It tests the candidate's ability to read the written materials used in the Police Academy and his or her perceptual skills, i. e., the ability to make detailed observations which is the most salient single characteristic of a patrol officer's job. The candidates either pass or fail the written examination.

Those who pass proceed to oral interviews before a three member board which includes two police officers and one person from the Department of Personnel. Here the candidate is asked a series of questions designed to ascertain his or her attitude toward police work. On the basis of the oral interviews, the candidates are classified well qualified, qualified and not qualified. The latter are dropped; the first two groups proceed to comprise the selection roster with the well qualified selected first on a random basis, to be followed by the qualified when the supply of well qualified is exhausted.

On the same day as the oral interview, but not as a present means of selection, the candidate is also given a battery of research tests concerned with personality, leadership and stability. The purpose of these tests is to develop even better methods of selection for future rosters.

We conclude that the new methods of selection are valid under Illinois law. They are competitive, "practical in their character" and "relate to those matters which . . . fairly test the relative capacity of the person examined to discharge the duties of the positions to which they seek to be appointed . . . ." *Ill.Rev.Stat.*1975, ch. 24, § 10–1–7.

There remains the question whether the Isakson and Burauer groups have a right to be hired from the 1971 and 1972 lists despite the existence of a valid new roster.

■ Illinois law provides that a civil service commission "may strike off names of candidates from the register after they have remained thereon more than two years." *Ill.Rev.Stat.*1975, ch. 24, § 10–1–14.

Unlike promotional lists, entrance level rosters may be taken down after two years even though existing vacancies may not yet have been filled. Compare § 10–1–14 with § 10–1–13; *see, e. g., Baker v. Wilson,* 39 Ill.App.2d 443, 189 N.E.2d 1 (1963); *People v. Chicago,* 226 Ill.App. 409 (1922). Persons still listed on the 1971 roster no longer have any right or entitlement under state law to be offered patrol officer positions since that list is much more than two years old. By choosing to proceed with appointments from the new roster, the City has, in effect, struck the old rosters. It should not be enjoined from doing so.

The motions of the Isakson intervening defendants and the Burauer intervening plaintiffs to compel their selection from the 1971 and 1972 rosters is denied. The City of Chicago is directed to submit to the court on June 21, 1977 at 9:00 a. m., the group of candidates next to be called to the Police Training Academy from the 1975 roster. The court finds pursuant to Rule 54(b) *Fed. R.Civ.P.,* that there is no just reason for delay in the entry of this order as a final judgment on these issues and directs the Clerk to enter a final judgment accordingly.