**UNITED STATES of America et al., Plaintiffs-Appellees,**

v.

**CITY OF CHICAGO et al., Defendants-Appellees,**

and

**Roy Isakson et al., Intervening Defendants-Appellants.**

**Nos. 76–2044 and 77–1681.**

United States Court of Appeals, Seventh Circuit.

Argued Oct. 28, 1977.

Decided Dec. 14, 1977.

Wayne B. Giampietro, Lawrence A. Poltrock, Richard M. Gutman, Chicago, Ill., for intervening defendants-appellants.

William R. Quinlan, Corp. Counsel, Jerome A. Siegan, Asst. Corp. Counsel, Chicago, Ill., Drew S. Days, III, Asst. Atty. Gen., Deborah M. Seymour, Atty., Dept. of Justice, Washington, D.C., Thomas P. Sullivan, U. S. Atty., Thomas A. Gottschalk, Chicago, Ill., for Kirkland and Ellis.

Before SPRECHER, Circuit Judge, COWEN, Senior Judge,* and WOOD, Circuit Judge.

SPRECHER, Circuit Judge.

This case involves the consolidated appeals of two related aspects of a civil rights action broadly challenging the employment practices of the Chicago Police Department.

---

* Senior Judge Wilson Cowen, of the United States Court of Claims, is sitting by designation.

Most aspects of the case have been settled by prior litigation in the federal courts.[1] The issue presented in this appeal involves the rights under Illinois state law of those white males remaining on the patrolman eligibility roster posted in 1972 to be appointed by the Chicago Police Department to enter the Police Academy.

I

On December 4, 1971, the Civil Service Commission of the City of Chicago administered an examination for the position of patrolman of the City of Chicago. An eligibility list was posted on July 19, 1972,[2] and hiring was begun. On August 14, 1973, the United States filed suit attacking this examination on the basis that it discriminated against minorities in violation of Title VII of the Civil Rights Act of 1964. The district court granted plaintiffs' motion for a preliminary injunction on November 7, 1974, enjoining the City from appointing any further personnel to the rank of patrolman for the City of Chicago from the eligibility list based on the 1971 examination until further order of the court. *United States v. City of Chicago*, 385 F.Supp. 543 (N.D.Ill.1974).

On December 16, 1974, the district court entered an interim hiring order under which 600 persons (including 300 minority males and 100 females) would be appointed. Upon fulfillment of this order, all minorities from the 1971 list were hired and only white males remained. The district court on February 28, 1975, granted leave to intervene as parties defendant to representatives of those white males who had been placed on the eligibility list in 1972 but had not yet been appointed (Isakson intervenors).

On January 5, 1976, the district court entered its final memorandum decision on the merits and its final decree and supplemental memorandum was entered on Feb-

ruary 2, 1976. *United States v. City of Chicago*, 411 F.Supp. 218 (N.D.Ill.1976). The district court found that the 1971 patrolman examination had a grossly disproportionate impact on minorities and ordered the City to hire persons with respect to mandatory hiring quotas. So long as these quotas were maintained and the interim hiring order was completed, the district court nevertheless allowed, but did not require, the City to make use of the remaining names on the 1971 list in subsequent hiring. 411 F.Supp. at 249.

On appeal this court vacated that portion of the decree which would allow the City to ignore the 1971 patrolman roster and remanded with the requirement that the district court should preserve as much of the Illinois statutory scheme as possible. *United States v. City of Chicago*, 549 F.2d 415, 437–38 (7th Cir. 1977). This court declined to decide whether persons on the 1971 roster must be hired prior to any other persons in light of the difficult problems of state law that might arise in such a determination.

In the meantime the City had devised a new examination which it administered on April 19, 1975. In February, 1976, the City produced a group of rosters based on the 1975 examination. The district court received comments and objections regarding the use of the 1975 examination and its results and on September 7, 1976, the court overruled these objections and approved the use of the 1975 eligibility list because it did not have an impermissible discriminatory effect. *United States v. City of Chicago*, 420 F.Supp. 733 (N.D.Ill.1976). Since the test was new and a determination of its overall validity could not be made, the district court felt that this question need not be reviewed in light of the test's failure to produce discriminatory results. Finally, the district court once again refused to require the City to utilize the remainder of the 1971

---

1. For a summary of the facts, see *United States v. City of Chicago*, 395 F.Supp. 329 (N.D.Ill. 1975). For a concise history of the prior litigation see *United States v. City of Chicago*, 534 F.2d 708 (7th Cir. 1976). This court's decision

on the merits can be found in *United States v. City of Chicago*, 549 F.2d 415 (7th Cir. 1977).

2. Appendix B to the Interim Hiring Order of December 16, 1974.

eligibility list before appointing persons from the new roster. The Isakson intervenors appeal from that determination.

The district court, on remand from the decision of this court on the merits, once again ruled adversely to intervenors and denied intervenors' motion to amend the decree to require "that those persons remaining on the 1971 eligibility list be hired for the position of patrol officers before white males from the 1975 eligibility examination." *United States v. City of Chicago*, 437 F.Supp. 256 (N.D.Ill.1977). The court held first that the 1975 examination and resulting eligibility roster was valid under both federal and Illinois state law. Second, the court concluded that the intervenors had no claim to appointment since the 1971 list had been posted for two years and, under Illinois state law, entrance level rosters may be removed after two years even though vacancies may exist unfilled. The court viewed the use of the 1975 roster by the City as a de facto striking of the 1971 roster and refused to enjoin the city from doing so. The city subsequently struck the list (Intervenors' Brief p. 19 and Intervenors' Reply Brief p. 2). Intervenors appeal from the 1977 decision of the district court and this appeal was consolidated with their earlier appeal from the September 7, 1976, ruling of the district court. Our jurisdiction derives from 28 U.S.C. § 1291.

## II

We address first the issue of intervenors' right to be hired under Illinois state law irrespective of the validity of the 1975 examination and its results. It is clear that intervenors took the 1971 examination in good faith, passed it, and their names were placed on an eligibility list on July 19, 1972, in accordance with Illinois law. Ill.Rev. Stat. ch. 24, §§ 10–1–7, 10–1–12. The City of Chicago hired some persons from this list. On November 7, 1974, the City was enjoined from making further appointments from the list by the district court although some persons on the list were subsequently hired pursuant to the Interim Hiring Order of the district court. On February 2, 1976, the district court gave permission to the City once again to utilize the 1971 list for hiring purposes. Finally, after the district court refused on June 17, 1977, to enjoin the City from striking the 1971 roster, the City issued an order taking the list down and no further appointments were made therefrom.

▮ Intervenors claim that they have been denied vested rights under Illinois law. Their right to be considered for entrance level positions exists as long as the eligibility list upon which intervenors' names appear remains posted.[3] The civil service commission, however, is not required to maintain an eligibility list until all those listed on it have been appointed. Ill.Rev. Stat. ch. 24, § 10–1–14 provides, in part, that "[t]he commission may strike off names of candidates from the register after they have remained thereon more than 2 [two] years." This statute does not provide any limitation on the commission's authority to strike an entrance level roster.[4]

▮ It is undenied that the roster in issue here was posted for two years before the commission struck it. Indeed, the list was posted for two years prior to the district court injunction prohibiting its further use.[5] The Illinois courts have been consist-

---

**3.** The characterization of the nature of intervenors' "rights" is not of crucial importance since intervenors do not claim that the actions of the district court violated the Due Process Clause of the Fourteenth Amendment. We note, however, that Illinois courts have considered such rights to be political in character and involving no property right. *Butts v. Civil Service Commission of City of Aurora*, 108 Ill.App.2d 258, 246 N.E.2d 853 (1969); *People ex rel. Hawkonsen v. Conlisk*, 119 Ill.App.2d 431, 256 N.E.2d 99 (1970); *People ex rel. Baker v. Wilson*, 39

Ill.App.2d 443, 189 N.E.2d 1 (1963); *Baldwin v. Hurley*, 9 Ill.App.2d 532, 133 N.E.2d 522 (1956).

**4.** In comparison, a limitation does exist regarding the striking of a *promotional* roster in that it may be removed after two years only if all existing vacancies are filled prior to cancellation. Ill.Rev.Stat. ch. 24, § 10–1–13.

**5.** The list was posted on July 19, 1972, and the district court injunction was entered on November 7, 1974. Since a two-year period elapsed prior to entry of the injunction, we

ent in upholding "the undoubted right to strike from an eligib[ility] list all names appearing thereon for a period of more than two years." *Baldwin v. Hurley*, 9 Ill.App.2d 532, 534, 133 N.E.2d 522, 523 (1956); *People ex rel. Hawkonsen v. Conlisk*, 119 Ill.App.2d 431, 256 N.E.2d 99 (1970); *People ex rel. Lynch v. City of Chicago*, 271 Ill.App. 360 (1934); *People ex rel. Walsh v. City of Chicago*, 226 Ill.App. 409 (1922). This right has been upheld even where the list has been cancelled after suit was instituted to prevent cancellation or to compel appointment from a roster. *People ex rel. Baker v. Wilson*, 39 Ill.App.2d 443, 189 N.E.2d 1 (1963); *Baldwin v. Hurley, supra.*

The underlying reason for allowing the civil service commission to have wide discretion to determine whether an eligibility list should be cancelled was explained in *People ex rel. Erickson v. Sheehan*, 24 Ill.App.2d 43, 47, 163 N.E.2d 834, 836 (1960):

> The policy behind this provision is to maintain an up-to-date register, the vitality of which may be guaranteed by the discretion placed in the commission to meet changing conditions and circumstances. Toward that end, the commission is authorized to strike a register which is no longer suitable to fulfill the function for which it was intended.

Here, the list involved is more than five years old, thereby raising some questions as to its validity in providing appropriate persons for patrolman duty.

While we are not unmindful of the plight of intervenors as a result of the federal court litigation involved in this case, we cannot say that the commission abused its authority in cancelling the July 19, 1972, eligibility roster. Nor can we say the dis-

trict court abused its discretion in refusing to require the City of Chicago to hire those remaining on the list or by refusing to enjoin the City from cancelling the list. We therefore conclude that intervenors' claims to be hired under Illinois law have been extinguished by cancellation of the eligibility roster posted in 1972.

### III

 The district court also held that the 1975 examination procedures and results were valid under federal and state law. The district court concluded that inasmuch as the 1975 examination was valid, the City, by its use of the 1975 roster, had, "in effect, struck the old rosters." *United States v. City of Chicago*, 437 F.Supp. 256, 258 (N.D.Ill.1977). In light of our holding on the issue of cancellation under the Illinois two-year statute of the eligibility list on which intervenors' names appeared, we do not believe that it is necessary or appropriate for us to rule on the validity of the 1975 examination under Illinois state law. Even if the 1975 examination was declared invalid, intervenors would have no claim to appointment by the civil service commission. Under these circumstances, we conclude that intervenors fail to allege "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult . . . questions." *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962); *Reich v. City of Freeport*, 527 F.2d 666 (7th Cir. 1975).[6]

Accordingly, the decisions of the district court of September 7, 1976 and June 17,

---

need not address the question of the propriety of striking a list which, although posted for a period of two years, was enjoined from use before that period accrued, or whether such an injunction might serve to toll the two-year period.

**6.** In order to challenge the 1975 examination and procedures, a person probably would have to claim that he or she took the test and was denied a place on the resulting eligibility roster because of the failure of the examination and

procedures to conform to Illinois law. We note that intervenors make no claim that the civil service commission did not fulfill the notice requirements of Ill.Rev.Stat. ch. 24, § 10–1–12 in administering the 1975 examination so as to apprise intervenors of the option of taking the test. In any case, questions regarding the propriety of the 1975 examination under the Illinois state law should be addressed in the first instance to the courts of the State of Illinois.

1977, refusing to require the City of Chicago to hire those remaining on the eligibility roster resulting from the 1971 examination and refusing to enjoin the civil service commission from cancelling that roster are

AFFIRMED.