UNITED STATES of America, Plaintiff,

Thomas W. Earth, Intervening Appellee,

v.

**CITY OF CHICAGO,**
Defendant–Appellant.

No. 88–1939.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 8, 1988.

Decided Feb. 22, 1989.

Rehearing and Rehearing In Banc
Denied May 5, 1989.

Michael K. Fridkin, Corp. Counsel, Chicago, Ill., for defendant-appellant.

Kenneth N. Flaxman, Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS, WOOD and COFFEY, Circuit Judges.

COFFEY, Circuit Judge.

This is another chapter in the lawsuit challenging the hiring and promotion practices of the Chicago Police Department. Plaintiff-appellee Thomas Earth was allowed to intervene in the suit on the ground that he was passed over for promotion to sergeant in violation of a court order directing that promotions be made according to rank on the 1979 sergeant's eligibility roster. Earth claimed he would have been promoted but for a recalculation of another officer's ranking one week before the promotions were made public. The district judge agreed with Earth's argument and granted his Petition for Promotion with back pay and benefits to December 5, 1986. We reverse.

## Procedural History

On August 14, 1973, the United States filed an action under Title VII, of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and other civil rights statutes, alleging discrimination in the hiring and promotional practices of the Chicago Police Department. Based on a finding of racial and sexual discrimination in hiring and promotion, Judge Prentice Marshall ordered various forms of relief, including that forty percent of future promotions to sergeant be reserved for eligible black or Spanish surnamed officers (1976 decree).[1] Eligible officers were those whose names appeared on the 1973 sergeant's eligibility roster, based on the 1973 Chicago Civil Service Commission's sergeant's examination, as well as departmental efficiency ratings and seniority. This court affirmed the finding of discrimination and imposition of mandatory hiring and promotional quotas. *United States v. City of Chicago*, 549 F.2d 415 (7th Cir.1977). The district court subsequently permitted the City to strike the 1973 sergeant's eligibility roster and we held that that order was not inconsistent with Illinois law. *United States v. City of Chicago*, 631 F.2d 469, 472–73 (7th Cir. 1980). A new roster was posted in 1979 and an *en banc* panel of this court held that changed circumstances required modification of Judge Marshall's 1976 decree to reduce the minority promotional quota from forty percent to twenty-five percent. *United States v. City of Chicago*, 663 F.2d 1354 (7th Cir.1981). In 1982, Judge Marshall ordered that five percent of promotions to sergeant be reserved for women regardless of race. App.Rec. # 1077.

On December 17, 1986, the City informed the district court that it was making promotions to sergeant from the roster list in accordance with the 70%/25%/5% white male/minority male/female quotas prescribed by the court. Given eighty antici-pated promotions, the quotas required the promotion of twenty minority males, four females (white or non-white) and fifty-six white males. As of December 1, 1986 Earth had the fifty-sixth highest rank among white males awaiting promotion. At that time, the City, after discovering an error in the computation in Officer Joseph Gandurski's performance rating,[2] advanced Gandurski (a white male) one position ahead of Earth on the promotional eligibility list. As a result of the re-computation and advancement of Gandurski, Earth dropped to fifty-seventh on the eligibility list. Gandurski received the promotion.

On February 1, 1988, Earth filed a Petition to Intervene in the ongoing 1973 discrimination lawsuit, along with a Petition for Promotion and Other Relief, both on the ground that "he was passed over for promotion to sergeant because the City of Chicago failed to comply with the Court's orders superimposing a quota on the rank order list prepared from the results of the 1979 sergeant's test." He further claimed that "if Mr. Gandurski was promoted over petitioner because an 'error' had been corrected, this correction should not have been undertaken without notice to petitioner and leave of Court to dispel any question of chicanery."

The City did not object to Earth's intervention but did respond to his Petition for Promotion with an explanation for the advancement of Gandurski's ranking:

"In late 1976[3] pursuant to an internal investigation within the City's Police Department and the Department of Personnel, it was determined that the performance rating of patrol officer Joseph F. Gandurski for the period July through December, 1976 had been apparently altered without explanation. The score had been changed from 85.0 to 80.0 (Copy of rating card attached as Exhibit

---

1. Judge Marshall, who has presided over the case from its inception, has since ruled on numerous petitions for intervention and promotion, including the petition for promotion filed by Thomas Earth.

2. Roster rankings are determined according to seniority and a weighted composite of three scores: a written sergeant's examination (40%), an oral interview (30%) and performance ratings (30%). Ill.Rev.Stat.1981, ch. 24, ¶ 10–1–13; App.Rec. # 1232, p. 2.

3. The City has advised us that this should read "In late *1986.*"

A). The investigation was triggered by a letter from officer Gandurski to former Police Superintendent Fred Rice dated October 21, 1986. (Copy of letter attached as Exhibit B). Officer Gandurski's letter was part of his attempt, ongoing since 1977, to correct what he believed to be a serious error which was having a detrimental affect [sic] on his career in the police department, specifically, on his rank on the 1979 sergeant's eligibility roster.

The City's investigations revealed information leading it to conclude that it was more likely than not that office [sic] Gandurski's performance rating was altered without justification. The sergeant who rated officer Gandurski acknowledged that he recalled giving a grade of 85.0 to the officer's performance for the period in question. (Copy of memorandum attached as Exhibit C). Officer Gandurski's performance ratings both before and after the period in question were in the 80's and lower 90's. Furthermore, the supervisor who would have approved the 1976 performance ratings had long since retired at the time of the investigation.

Based on the foregoing in November, 1986, the City made the decision to correct the 1976 performance rating which changed officer Gandurski's overall efficiency rating from 83.47 to 83.85. The correction resulted in a change in officer Gandurski's rank from 577 to 536 on the sergeant's eligibility list. (Order attached as Exhibit D).

The City's correction of officer Gandurski's 1976 performance rating was not the result of 'chicanery' as cavalierly suggested by the petitioner [footnote omitted]. Rather, it was a decision made after an investigation which revealed that it was the equitable thing to do. It was also a decision which did not in any way violate this court's orders that promotions be made in rank order from existing eligibility rosters with appropriate remedial quotas."

Notwithstanding the City's explanation, Judge Marshall granted Earth's Petition for Promotion and awarded full back pay and benefits. Judge Marshall stated:

"We have concluded that the objections are not well founded and the petition should be granted. On December 17, 1986, it was represented to us that eighty promotions to the rank of sergeant had been made from the roster which we had earlier approved applying the quotas which had been adopted in April of 1984. We were not told that the roster had been altered with the result that Gandurski jumped Earth and Earth was excluded from promotion. Neither was Earth. Earth had a protectible interest in his position on that roster. He was deprived of that interest without any notice or opportunity to be heard. And we were induced to promote from a roster which had been altered without any notice to us. In these circumstances we believe equity compels that Earth be promoted to the rank of sergeant in the Chicago Police Department with full back pay and benefits to December 5, 1986."

On May 31, 1988, this court denied Earth's motion to dismiss the City's appeal of Judge Marshall's order and also granted the City's emergency motion to stay implementation of the order pending the outcome of this appeal.

### DISCUSSION

The City on appeal presents a three-pronged attack on Judge Marshall's ruling initially claiming that Earth has no protectible interest in his rank on the 1979 sergeant's eligibility roster. Next, arguing that even if Earth has a protectible interest in his position on the roster he was not deprived of that interest without due process. Finally, the City contends that Earth was entitled to no more than nominal damages even if he was deprived of a property interest without due process of law.

Earth urges at the outset that we should not reach the merits of any of those contentions because they are raised for the first time on appeal. Earth's petitions to intervene and for promotion failed to assert a property interest in promotion, but rather argued that the City had "failed to comply

with the Court's orders" regarding rank order promotion from the 1979 roster. The City did not address the property interest issue in its brief in response to the motions. The City simply argued that it had advanced Gandurski to his proper rank after correcting the roster for good cause. Earth claimed a property interest in his roster ranking, for the first time, in his reply brief in the district court. Even though Earth failed to raise the issue in his principal brief, Judge Marshall relied on this newly conceived theory in his minute order granting Earth's petition for promotion. This is not a case where the district court failed to consider an issue because the appellant did not raise it below. To the contrary, Judge Marshall's decision is premised on a property rights theory. It is folly for Earth to assert that an appeals court on review of a district court judgment cannot consider the merits of each and every theory the district judge relied upon in deciding the case. *See Toney v. Burris*, 829 F.2d 622, 626 (7th Cir.1987) (waiver rule does not apply to the law on which a decision is based).

■ Turning to the merits, the City contends, based on *Bigby v. City of Chicago*, 766 F.2d 1053 (7th Cir.1985), that Earth has no protectible interest in his rank on the 1979 roster. In *Bigby*, a group of black police sergeants brought suit against the City under Title VII alleging that the City had discriminated against them by refusing to promote them to lieutenant, because they failed to achieve a qualifying score on the lieutenant's examination which they contended was racially biased. A group of white and hispanic police sergeants sought and were allowed to intervene in the suit on the ground that it was not "job-related" and therefore violated the intervenors' rights under the Due Process Clause of the Fourteenth Amendment. The district court after argument agreed that the exam was discriminatory and ordered the immediate promotion of eleven black sergeants to lieutenant. However, the court refused to or-

der promotion of the intervenors because, though the examination was invalid under Title VII, it was not arbitrary or capricious and so did not warrant relief under the Fourteenth Amendment. The intervenors appealed. We held that the intervening sergeants had neither a property nor liberty interest in a fair promotional exam or in "the rank, which they have not yet attained, of lieutenant." *Id.* at 1056. One passage in *Bigby* is particularly instructive here:

"[T]he promoting officials are authorized to choose among the highest-rated applicants, and no criteria are provided for that choice. *See* Ill.Rev.Stat.1981, ch. 24, ¶ 10–1–13; Chicago Municipal Code ¶ 25.1–5(5) (1977). Construing the counterpart provision in the statute governing the police forces of smaller municipalities, *McCoy v. Board of Fire and Police Comm'rs*, 79 Ill.App.3d 742, 744, 35 Ill.Dec. 70, 72, 398 N.E.2d 1020, 1022 (1979), holds that 'the promotion of a patrolman to sergeant is one of discretion,' so that the plaintiff 'had no vested right to promotion.' The same is true of promotion from sergeant to lieutenant. Indeed it is more strongly true, since discretionary factors loom larger as one moves up on a hierarchy. Promotion to lieutenant's rank is not a matter of right and is not governed by fixed rules which if complied with automatically entitle the applicant to promotion. 'To have a property interest ... a person ... must have more than a unilateral expectation of it. He must, instead, have a legitimate *claim of entitlement* to it.' [citation omitted]"

*Bigby*, 766 F.2d at 1057.

As we explained in *Bigby*, Illinois law does not create an entitlement to promotion, because Ill.Rev.Stat.1981, ch. 24, ¶ 10–1–13 and Chicago Municipal Code § 25.1–5 give the promoting authorities unfettered discretion to choose from among the five highest rated applicants for each available promotion.[4] *See also Miller v.*

---

4. Ill.Rev.Stat. ch. 24, ¶ 10–1–13 provides in relevant part:

"The Commission shall, by its rules, provide for promotions in such classified service, on the basis of ascertained merit and seniority in

*Henman,* 804 F.2d 421 (7th Cir.1986) (when there are no binding substantive criteria, when a decision cannot be "wrong," there is no constitutionally protected property interest.) Thus, even assuming that Earth was the 56th highest ranking white male, it would be proper for the City to promote any one of the four officers other than Earth who were recommended for promotion.

Earth protests that *Bigby* is not determinative because that case failed to address his claim that he is entitled not only to promotion, but to his ranking on the roster as originally posted. As stated above, even if he was entitled to the roster position he occupied prior to the correction of Gandurski's performance rating, it does not automatically follow that he was entitled by law to be promoted to sergeant. Moreover, nothing in the applicable statute or rule creates this alleged right to a particular roster ranking sufficient to constitute a "property" interest in the constitutional sense. As roster rankings are based, in part, on subjective, discretionary performance ratings, and a candidate for promotion has no legal "right"to a favorable performance rating from his superiors (*Bigby,* 766 F.2d at 1056), roster rankings are dependent upon the superior's perception of a candidate's performance at a given time and are at best uncertain. Because an officer cannot be assured that he will achieve a particular ranking on a given promotional roster, we fail to understand how he can assert that a particular ranking is "securely and durably" his under state law. *See Yatvin v. Madison Metro. School Dist.,* 840 F.2d 412, 417 (7th Cir. 1988). Moreover, in this case Earth presented no evidence that Gandurski's composite score was not, in fact, higher than his. Neither does an entitlement attach to a particular roster position by virtue of publication of the roster. Earth has neither identified nor cited any statute, rule or regulation that might be properly construed as creating a binding right to or property interest in a roster position, or as a promise that the City will not revise ranks after publication.[5]

Nevertheless, Earth submits that this court confirmed the existence of a property right to a particular ranking in *United States v. City of Chicago,* 567 F.2d 730 (7th Cir.1977). In that case, a number of white male candidates for Chicago patrolman positions claimed vested rights under Illinois law to be hired because their names appeared on the 1971 hiring roster. We rejected the claim on the ground that Illinois law did not require the Civil Service Commission to maintain an eligibility roster until all those listed had been appointed. Rather, the Commission could (and did in that case) simply strike an entrance level roster after it had been posted for two

service and examination and shall provide, in all cases where it is practicable, that vacancies shall be filled by promotion. All examinations for promotion shall be competitive among such members of the next lower rank as desire to submit themselves to such examination and the results thereof and the promotional eligible registers prepared therefrom shall be published by the Commission within 60 days after any examinations are held.... The Commission shall submit to the appointing power the names of not more than three applicants for each promotion having the highest rating except that a commission in any municipality with more than 130,000 but less than 2,000,000 population may submit the names of not more than five applicants having the highest rating for each promotion...."

Section 25.1–5 of the Chicago Municipal Code requires the Commissioner of Personnel to issue personnel rules. Subsection 5 requires that the rules provide "[f]or the certification to an appointing authority of the names (a) of the five highest persons available on the appropriate eligible list to fill each vacancy, or (b) from the highest ranking group if the list is by rankings instead of numerical ratings." Chicago is a "home-rule" unit, and the Illinois Constitution provides that ordinances or rules promulgated by "home-rule" units supercede conflicting state statutes enacted prior to 1971 (as ¶ 10–1–13 was) (*see Messina v. City of Chicago,* 145 Ill.App.3d 549, 99 Ill.Dec. 493, 495 N.E.2d 1228 (1st Dist. 1986)). Thus, it appears that the five (rather than three) highest rated applicants are recommended for promotion.

**5.** Earth's citation of Rule XII, Section 6 of the Chicago Personnel Rules is not persuasive. That section only limits the time within which an employee may request review of a performance evaluation. It does not limit in any way the City's discretion to revise roster rankings.

years. 567 F.2d at 733. In a footnote, which Earth relies upon, we observed

> "In comparison, a limitation does exist regarding the striking of a *promotional* roster in that it may be removed after two years only if all existing vacancies are filled prior to cancellation. Ill.Rev. Stat. ch. 24, § 10–1–13."

567 F.2d at 733 n. 4 (emphasis in original).

Earth's reliance on the footnote above is misplaced. The City did not strike the 1979 promotional roster while vacancies existed. Nor was Earth's name removed from the list. At the time Gandurski was promoted over Earth, promotions to sergeant were being made from the 1979 roster and Earth's name appeared thereon, albeit with a corrected ranking.[6] Likewise, language in *United States v. City of Chicago*, 549 F.2d 415, 438 (7th Cir.1977), also cited by Earth, to the effect that white, male officers "must be selected from the applicable eligibility rosters, in rank order," is of little benefit in this factual situation. Gandurski was promoted in rank order: Earth made no showing that Gandurski's revised ranking was improper. The question is whether Earth was deprived of a constitutionally protected interest when the City altered Gandurski's ranking to move him ahead of Earth. The cases cited by Earth do not address that issue. But the message from *Bigby* and under Illinois law is clear: a roster ranking may create an expectation of promotion, but an officer has no entitlement to a particular roster position or to promotion. Neither Illinois law nor the Chicago Municipal Code entitle Earth to the challenged promotion much less to remain as the 56th highest ranking white male. We hold that appellant Earth was not deprived of a property interest when Gandurski was selected for promotion.

At oral argument, Earth suggested that Judge Marshall's reliance on a property right theory was merely an "alternative" holding. The court's primary holding, he argued, was that the City had violated the 1976 decree in altering the rankings without notice to the court. Earth submits that the court order directing his promotion was a legitimate exercise of the district judge's discretion to enforce his 1976 decree. Assuming that Judge Marshall's reliance on a property right theory was an alternative holding, we do not agree that Earth's promotion was a proper exercise of the district judge's discretion.

■ Earth was allowed to intervene in the underlying lawsuit, commenced in 1973 in an attempt to remedy alleged racial and sexual discrimination in the Chicago Police Department's hiring and promotional practices. Our previous decisions in the case upheld Judge Marshall's discretion to impose hiring and promotional quotas, and that discretion unquestionably extends to enforcement of those quotas. But this case contains no hint of racial or sexual discrimination. Gandurski, a white male, was selected for promotion instead of Earth, another white male.[7] Both Earth and Gandurski were among the five highest rated applicants eligible for promotion and according to Illinois law and the Chicago Municipal Code the hiring authority was free to choose any one of those five candidates. The choice of Gandurski was a proper exercise of the promoting authority's discretion. Thus, it was error for the district judge, in the exercise of his discretion, to overrule the promoting authority's decision in the absence of a showing that Officer Gandurski was not properly among the five highest rated applicants. Judge Marshall did not find that Gandurski's revised ranking was improper (the judge simply noted that the City's objections to Earth's promotion "are not well founded"),

---

**6.** Subsequent to Gandurski's promotion, on April 6, 1987, Judge Marshall advised the City that he would no longer approve promotions from the 1979 roster and suggested that the City offer a new promotion examination.

**7.** Because both Earth and Gandurski are white males the City's revision of the roster rankings cannot of itself be classified as a clandestine attempt to avoid the minority or gender promotional quotas imposed by the court. This case therefore stands in contrast to petitions for intervention filed by black and hispanic officers, cited by appellant, complaining that the City changed their minority status or altered their roster ranking without notice.

and the record discloses that Earth made no such showing.

We hold that Earth has failed to establish a property interest in his original roster ranking, thus he is not entitled to promotion to sergeant. We also hold that Judge Marshall abused his discretion in ordering Earth's promotion in light of Earth's failure to establish that Gandurski's revised ranking was improper.

We reverse the district court and direct Judge Marshall or his successor to enter judgment in favor of the City of Chicago.

REVERSED.