[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION AS TO INJUNCTIVE RELIEF SOUGHT BY JAMES EASTWOOD
Two Lieutenants in the Fairfield Fire Department find themselves embattled regarding promotion to a single captaincy slot. Neither litigant accuses the other of wrongdoing and everyone involved agrees that each is eminently qualified. The dispute has arisen out of an incorrectly scored written examination. Prior to any correction, Lt. James Eastwood was named, albeit not sworn; after correction, the ruling body, the Town's Fire Commission, amended its promulgated list and announced, instead, that Lt. Gomola would become the next Captain, for the correction of the scoring keys to two answers resulted in a reversal of the Eastwood and Gomola rankings. The Commission is ready to swear Gomola in.
Lt. Eastwood seeks temporary injunctive relief. This court is thus required to determine whether Lt. Gomola's formal installation ought to be enjoined, and to decide whether Lt. Eastwood has been victimized by unlawful overstepping by the Commission in derogation of any due process entitlement he might have had in his originally higher place on the uncorrected pre-amendment list. CT Page 4713
This court has concluded that the Commission acted properly, within its rights and powers, and further that Lt. Eastwood has no compelling claim to procedural protections deriving from any "entitlement" purportedly bestowed by his original place on the incorrectly scored list.
A more detailed factual exposition is needed.
In June, 1998, a written examination was offered to Lieutenants in order that a ranked list of candidates would be established from which captaincy appointments would be made. The written exam was part of a multi-part test/evaluation procedure. (Points were also given for performance on an oral exam and for seniority.) One Dr. John T. Flynn composed, gave and scored the written examination. When the results were initially readied, the relevant ranking was:
1. Lt. William Kessler
2. Lt. James Eastwood
3. Lt. George Gomola
There being one vacancy already extant at the time, Lt. William Kessler was appointed from the newly promulgated list and sworn in (Both lieutenants in contest here concede that neither version of the list for captain would find Kessler anywhere but first, and thus no one challenges his appointment to the first vacancy).[1]
It was also arranged that contestants who desired to review their written exam performance and results would be allowed a review session with Dr. Flynn. Gomola sought to do so, and, apparently, Eastwood did not. During Lt. Gomola's encounter, it was discovered and readily conceded by Dr. Flynn that Gomola's answers were erroneously marked wrong in two instances and, on Flynn's further review, in Eastwood's, in one. The effect was to leave Gomola with a narrowly higher score than Eastwood.[2] Dr. Flynn communicated this to the Chief (and incidentally, at that time, not to the Commission, a fact the court has not found significant).
Because no Commission action ensued to suggest that the "new" score would result in a reversal of the original Eastwood/Gomola ranking, Lt. Gomola pursued a grievance through 2 steps (to the CT Page 4714 Chief and Commission, respectively) in an effort to achieve a placement on the list ahead of Lt. Eastwood and met with no success.
Lt. Gomola then came to this court seeking said relief. The court declined to issue such equitable relief, largely based on the feeling that the issues had not fully ripened, as the Commission had not acted in any fashion actively detrimental to Lt. Gomola. The court merely said that whichever "edition" of the promotion list, if any, the Commission chose to follow, a space of 14 days between announcement and swearing in should be left in order that the aggrieved party, whomever it might be, could then challenge the result here.
The Commission then appointed one of its members, Mr. Money, to undertake a review of the entire test results with Dr. Flynn. Upon this review, the aforementioned score error was verified and apparent need for equitable reversal of these two lieutenant's rankings was communicated to the Commission. By a 3-2 vote, the Commission decided to amend the list and announced that Lt. Gomola would be appointed to the newest and currently open vacancy. Before Gomola's installation, Lt. Eastwood came seeking the injunctive relief this court is compelled to reject today.
The court has been unable to find case law which would afford to Lt. Eastwood the status of one who possesses something of an entitlement in his initial ranking, erroneous by all accounts, such that due process rights must be afforded him before such "entitlement" becomes corrected downward. Nor has the court been shown any conduct by the Commission which violates the powers and obligations bestowed and imposed upon it by the Charter. Simply put, a clearly erroneous score and concomitant ranking is a thin reed upon which to stand in a struggle with a corrected (and correct, by all the evidence) result, especially when one is armed only with the Charter's failure to address, allow or proscribe the correction and the unsupported notion of property right in the erroneous ranking.
The Charter provides that the Fire Commission shall "have sole power to appoint and promote to all positions in the department, and all appointments and promotions . . . shall be made on the basis of merit." It shall also "determine the qualifications for each rank and grade in the Fire Department." Charter, Section 10.6. Similarly, per C.G.S. 7-474 (g): "Nothing herein shall diminish the authority and power of any municipal civil service CT Page 4715 commission . . . to conduct and grade merit examinations and to rate candidates in the order of their relative excellence from which appointments or promotions may be made. . . ." No violation of these requirements has been shown this court.
"[A] plaintiff claiming due process protection under the Fourteenth Amendment must possess a `property' or `liberty' interest that is somehow jeopardized by governmental action, necessitating a pre- or post-deprivation hearing as a safeguard. . . . However, [t]he Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions. . . . An interest protected or cognizable under the due process clause must have a basis in existing rules or understandings that . . . secure certain benefits and that support claims of entitlement to those benefits. . . ." (Citations omitted; internal quotation marks omitted.) Hunt v. Prior, 236 Conn. 421, 436, 673 A.2d 514
(1996). "Thus, [p]roperty interests are more than abstract needs, desires or unilateral expectations of benefits or privileges . . . Rather, a person must have a legitimate claim of entitlement to a benefit or privilege to have a property interest in that benefit. . . ." (Internal quotation marks omitted.) Huntv. Prior, supra, 236 Conn. 436-37.
Lt. Eastwood does not have a sufficient property interest in his rank on the list promulgated by the Fire Commission in order to raise a due process challenge to the Fire Commission's amendment to the list. Because his higher rank was due to incorrect scoring, he does not have a legitimate claim of entitlement to the higher rank. Although there does not appear to be any Connecticut cases directly on point, two cases from other jurisdictions are illustrative. In Newark Branch, N.A.A.C.P. v.Town of Harrison, N.J., 940 F.2d 792 (3rd Cir. 1991), the plaintiffs obtained an injunction precluding the town from requiring its police, fire, and non-uniformed employees to reside within the town. Further, the court ordered the town to recruit and employ qualified black applicants in accordance with their availability in the relevant labor market. Id. at 797. The district court also enjoined the town from filling municipal vacancies for uniformed employees from the eligibility lists that were complied while the residency requirement was in effect. Id. The Town appealed the district courts decree raising the following three claims of error: (1) whether the district court's restrictive definition of the relevant labor market produced an inaccurate conclusion with respect to disparate impact; (2) CT Page 4716 whether the district court erred in concluding that the town had not presented legitimate business justification for the challenged ordinance; and (3) whether the court erred in the terms of the decree entered.
More important to the present case, however, is the challenge of the decree by seven town residents who addressed the court asamicus curiae. (The Amici actually requested substantive relief, despite not being parties and despite not having sought to intervene. The Court of Appeals stated that it would evaluate their claims in order to determine whether there are grounds, not already identified which would require reversal of the trial court. 940 F.2d at 808-09.) The amici alleged "that the district court's invalidation of the then current list of eligibles deprived them of due process of law." (These residents took the test and were appointed to a hiring eligibility list for firefighter position(s), and challenged the trial court's decree which enjoined hiring from the list). The amici argued that the district court's order to invalidate "the eligibility list without according those on the list an opportunity to be heard deprived them of a property interest without due process of law." Id. at 809. The court stated that "[i]n order for amici to state a cognizable due process claim based on invalidation of the eligibility list, they must establish a protected property interest in their particular rank on the eligibility list. To have a property interest in a benefit, a person must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim for entitlement to it. . . . Legitimate claims of entitlement may be created expressly by state statute or regulation or may arise from government policies or mutually explicit understanding between a government employer and employee. . . ." (Citations omitted; internal quotation marks omitted.) Id. at 809. The court held that "[f]ar from depriving these fire fighter applicants of the right to be considered for a position, the decree requires only that amici and any others similarly situated compete, on the basis of merit, against those candidates who may have been impermissibly excluded from the original eligibility list. . . . [N]othing in the record . . . suggest[s] that any interest, much less a recognized property interest, of amici has been arbitrarily undermined by the district court decree." (Internal quotation marks omitted.) Id. at 810. The court further held that "Candidates who scored well on an invalid exam do not have an a `absolute right' to or even a `legitimately firmly rooted expectation' of the promotion." Id. CT Page 4717 at 811.
So too, here, it is extraordinary difficult to characterize Lt. Eastwood's interest in an incorrect and very simply incorrect score as one worthy of the "protection" sought. Similarly, inUnited States v. City of Chicago, 869 F.2d 1033 (7th Cir. 1989), the Seventh Circuit Court of Appeals held that a police officer had no protectable property interest in his rank on the departments' promotion roster. The court held that the officer was not denied a constitutionally protected liberty interest when the city amended the rankings and reduced said officer's rank on the list due to correction of an error in the ranking of a fellow officer. The Court of Appeals stated that "a roster ranking may create an expectation of promotion, but an officer has no entitlement to a particular roster position or to promotion." Id at 1038.[3]
The court holds that the intervening defendant in the present case does not have a constitutionally protected interest in his ranking on the Fairfield Fire Department's pre-amendment, erroneously scored list, and denies all equitable relief sought.
NADEAU, J.