631 F.2d 469
 23 Fair Empl.Prac.Cas. 512,
23 Empl. Prac. Dec. P 31,134
UNITED STATES of America, Plaintiff,
v.
CITY OF CHICAGO, a Municipal Corporation, et al., Defendants-Appellees,
and
Louis Arado et al., Intervening Defendants-Appellants.
 No. 79-1645.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 4, 1980.
Decided July 9, 1980.
 
 Joseph A. Morris, Chicago, Ill., for plaintiff.
 Philip L. Bronstein, Corp. Counsel, Chicago, Ill., Robert T. Moore, U.S. Dept. of Justice, Washington, D.C., for defendants-appellees.
 Before SWYGERT and PELL, Circuit Judges, and BAKER, District Judge.*
 SWYGERT, Circuit Judge.
 
 
 1
 At issue in this appeal is whether the district judge abused his discretion when he permitted the City of Chicago to strike a 1973 sergeant's promotional roster without promoting 111 of 400 white Chicago police officers who would remain eligible for promotion if the roster were to remain in effect. Appellants-intervenors argue that the remedy approved by the district court failed to comport with state law and violated principles of equity. We reject both contentions and affirm the district court's decision approving the City's promotional plan and denying the intervenors' motion to enjoin the striking of the 1973 promotional roster.
 
 
 2
 * This protracted litigation began in August 1973 when the United States filed a complaint alleging inter alia that the promotional practices of the Chicago Police Department reflected a pattern and practice of discrimination based on race and sex, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq.[1] In March 1974, Louis Arado and other white police officers who held places among the top 400 on a 1973 sergeant's promotional roster were granted leave to intervene as defendants in this action.[2] That promotional roster was based on the results of a written sergeant's examination, departmental efficiency ratings, and seniority. In November 1974, the district judge entered a preliminary injunction prohibiting any further use of the 1973 sergeant's promotional roster until further order of the court because the written examination on which the roster was based had a racially disproportionate impact against minority candidates and was not job-related. United States v. City of Chicago, 385 F.Supp. 543 (N.D.Ill.1974). To fill vacancies in the rank of sergeant, the City proposed and the district judge approved a plan to promote numerous "temporary" sergeants not to be selected from the 1973 sergeant's roster. In January 1976, after a trial on the merits, the district judge entered a memorandum decision reaffirming his November 1974 finding of unlawful discrimination in promotions. In an implementing order of February 2, the district judge agreed to allow the temporary sergeants to be made permanent. He further ordered that 40% of the officers promoted to sergeant be black or Spanish-surnamed. At its option, the City was allowed to use the 1973 roster in determining promotions according to a 60-40 white-minority ratio.[3]
 
 
 3
 Upon the motion of the Arado intervenors, the permanent appointment of any sergeants was stayed, pending appeal to this court. In 1977, we affirmed the district court's ruling that the 1973 sergeant's examination discriminated against minority candidates for promotions and was not shown to be job- related. United States v. City of Chicago, 549 F.2d 415 (7th Cir. 1977). But we agreed with the Arado defendants that with the quotas imposed, the district court erred in allowing the City to make promotions purely at the discretion of the Police Department rather than on the basis of the 1973 roster. We stated:
 
 
 4
 The temporary appointments to sergeant were made completely at the discretion of the Police Department. The (Illinois Municipal) Code appears to have been designed exactly to prevent this exigency. . . . Promotions to sergeant after the forty percent quota has been filled 35 must be made from a roster derived pursuant to state law.
 
 In footnote 35, we noted:
 
 5
 Fulfillment of the forty percent promotion quota, as in the case of the hiring quota, is subject to the availability of "qualified" black and Hispanic applicants. Again, this language presumably directs the Police Department to select black and Hispanic patrol officers to fill the quota from the applicable eligibility list-in this case, the 1973 roster.
 
 
 6
 549 F.2d at 439.
 
 
 7
 On February 18, 1977, the Arado intervenors moved the district court for an order requiring all existing vacancies to be filled on a permanent basis from the 1973 sergeant's roster. The City responded by filing a plan to fill all 285 vacancies then existing in the rank of sergeant from the 1973 roster and then to strike that roster. In March 1977, the Arado intervenors objected to the City's proposal and moved that the 1973 roster be retained until the top 400 persons on that roster were promoted.
 
 
 8
 In March 1978, with no decision by the district court on their March 1977 motion, the Arado intervenors moved to enjoin the City from appointing a new round of "temporary" sergeants. In May 1978, the City filed another promotional plan which proposed filling the then-existing 117 vacancies from the 1973 roster and then striking the list. Candidates would be promoted, in their respective racial or ethnic categories, in the order in which their names were ranked on the roster. To satisfy the mandated racial quota, some candidates would be promoted who were not within the top 400 names on the roster. The Arado intervenors again objected to striking the 1973 roster.
 
 
 9
 At a June 23, 1978 hearing, the district court approved the City's plan and denied the motion by the Arado intervenors to enjoin the City from striking the roster. Findings of fact and conclusions of law were made at that time. Then on June 30, 1978, the intervenors moved for reconsideration on the basis of Regents of the University of California v. Bakke, 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978), which had been decided a few days after the district court decision. In April 1979, the district court denied the motion for reconsideration and entered an order approving the City's May 1978 promotional plan and denying the motion of the Arado intervenors for an injunction against striking the 1973 roster. He also entered an order stating that any new promotion made from the 1973 roster had to be approved by the court.
 
 
 10
 At the oral argument in this appeal, counsel for both parties agreed that a new written sergeant's examination has been given and a 1979 sergeant's promotional roster has been compiled. In November 1979, on a motion by the Arado intervenors, the district judge enjoined the City of Chicago, which had not yet formally stricken the 1973 promotional roster, from striking that roster pending this appeal.
 
 II
 
 11
 The issue before us is whether the district judge abused his discretion when he approved the City's plan to strike the 1973 roster. We are mindful of the fact that "(i)n shaping equity decrees, the trial court is vested with broad discretionary power; appellate review is correspondingly narrow." Lemon v. Kurtzman, 411 U.S. 192, 93 S.Ct. 1463, 36 L.Ed.2d 151 (1973).
 
 
 12
 Appellants-intervenors argue that the continued use of the 1973 roster, albeit according to the prescribed 60-40 ratio, is mandated by state law and equity. They remind us that in our earlier opinion we reversed the district court's approval of permanent appointments to sergeant made at the City's discretion rather than according to state law:
 
 
 13
 While the district court was required under Title VII to suspend this statutory scheme to remedy illegal discrimination, it should not have authorized actions contrary to the Municipal Code which were not necessary to achieve this goal.
 
 
 14
 549 F.2d at 439.
 
 
 15
 At that time we stated that the relevant eligibility list was the 1973 roster.
 
 
 16
 Intervenors argue that according to state law, the 1973 roster was still the relevant roster on June 23, 1978 when the district court approved the City's plan to strike it. Their state law argument rests on section 10-1-13 of the Illinois Municipal Code which provides:
 
 
 17
 The (Civil Service) (C)ommission may strike off all names of applicants from a promotional eligible register after they have remained thereon more than 2 years, provided that the commission shall notify the appointing power before the names are stricken and such appointing power shall fill any existing vacancies before all names are stricken from the promotional eligible register.
 
 
 18
 Ill.Rev.Stat. ch. 24, § 10-1-13.
 
 The Two Year Requirement
 
 19
 Intervenors contend that their names had not been on the promotional roster for more than two years and therefore under section 10-1-13, Ill.Rev.Stat. ch. 24, § 10-1-13, the district judge abused his discretion in permitting the names to be stricken. Conceding that more than two years had passed since late 1973 when the promotional roster was compiled, intervenors point out that the 1973 roster was enjoined in November 1974 and was not reinstated until January 1977 when, according to intervenors, the first promotions were made from that roster. Then in June 1978, the district court approved striking the roster, resulting in an alleged "actual life" of only 17 months. We cannot agree that the names on the 1973 roster had not "remained thereon more than 2 years." Ill.Rev.Stat. ch. 24, § 10-1-13. The district judge pointed out the crucial flaw in intervenors' argument when he stated, "(A)s a matter of fact, all of the (permanent) sergeant vacancies which have accrued in the Chicago Police Department since the fall of 1973 (were) filled from the 1973 roster" until the last vacancies were filled in May 1978. That finding of fact is not disputed by the intervenors.[4] Moreover, the use of the 1973 roster was not enjoined for the first time until November 1974, adding at least 10 months to the 17 months it was "posted," even according to intervenors' calculations.[5] In short, we are satisfied that the names on the 1973 roster had remained thereon for more than the required two years.
 
 The Vacancies Occurring After May 1978
 
 20
 Next intervenors argue that all vacancies for the position of sergeant presently existing must be filled from the 1973 roster because that roster has not yet been stricken. Section 10-1-13 of the Illinois Municipal Code, Ill.Rev.Stat. ch. 24, § 10-1-13, provides that all names on a roster may be stricken only after the appointing power, in this case the Chicago Police Department, fills any existing vacancies. As we understand it, intervenors are contending that state law will be violated if the 1973 roster, not yet formally stricken by the City, is now stricken without filling vacancies that have occurred between June 1978, when permission was granted to strike the roster and existing vacancies were filled pursuant to the City's plan, and the date on which the City finally takes the formal action of striking the roster.
 
 
 21
 Plaintiff United States and defendant City of Chicago, both appellees in this appeal, respond by noting that the relevant time period for our consideration is not the present but June 1978 when the district court approved the City's plan to strike the 1973 roster. It is not disputed that the plan approved in June 1978 did provide for filling all then-existing vacancies before striking the roster. We must agree with the appellees that the issue of vacancies occurring after May 1978 involves a period of time subsequent to the district court decision we are called upon to review. An examination of the procedural posture of this case is necessary to explain our conclusion.
 
 
 22
 On June 23, 1978, the district judge approved the City's May 1978 plan to fill all existing vacancies and then strike the roster. He also denied the intervenors' motion to enjoin the striking of the roster.[6] One week later, intervenors requested and the judge agreed to reconsider his decision authorizing the striking of the 1973 roster. The motion for reconsideration was based on the intervenors' allegation that equitable issues discussed in Regents of the University of California v. Bakke, 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978), which was decided between June 23 when the district judge decided the issues appealed here and June 30 when the intervenors moved for reconsideration, mandated that the roster not be stricken until the intervenors had been promoted. On April 29, 1979, the district judge entered an order which reiterated his approval of the promotional plan filed by the City in May 1978 and denied the intervenors' motion for reconsideration.
 
 
 23
 It is not disputed that the district judge properly treated intervenors' Bakke concerns as a motion to reconsider his June 23 decision. "Any motion that draws into question the correctness of the judgment is functionally a motion under Civil Rule 59(e), whatever its label." 9 Moore's Federal Practice P 204.12(1), at 4-67 (2d Ed. 1980). See Seshachalam v. Creighton Univ. Sch. of Medicine, 545 F.2d 1147 (8th Cir. 1976).
 
 
 24
 The intervenors have appealed from the April 1979 order denying their motion for reconsideration of the district court's June 1978 decision. The issue of appealability from the denial of a Rule 59 motion was addressed by this court in Hennessy v. Schmidt, 583 F.2d 302 (7th Cir. 1978):
 
 
 25
 It is clear . . . that the motion filed in this case was a Rule 59 motion, a post-judgment motion directed to the discretion of the trial court for correction of errors and thus is not normally an appealable order.
 
 
 26
 The general practice now followed in the appellate courts, when an appeal is mistakenly taken from the order denying the motion . . . when it should have been from the judgment, is to "regard the error as harmless and treat the appeal as taken from the judgment." 6A Moore's Federal Practice P 59.15(1). We . . . adopt the general rule as stated above, subject to the following qualifications: the judgment from which the appellant intended to appeal must be final; it must be clear what judgment is involved; the motion and appeal must have been timely made; and there must be no prejudice to the other party.
 
 
 27
 583 F.2d at 305-306 (emphasis in original) (footnote omitted).[7]
 
 
 28
 We therefore treat this appeal as taken from the June 1978 decision approving the City's plan and denying the intervenors' motion to enjoin striking the 1973 roster. How vacancies occurring after June 1978 would be filled was never before the district judge because the April 1979 order was in response to the motion for reconsideration of his 1978 decision. In April 1979 when the motion for reconsideration was denied, the finality of the June 1978 decision was restored. See 6A Moore's Federal Practice P 59.15(4) at 59-293 (2d ed. 1979).
 
 
 29
 Intervenors' contention, strenuously urged at oral argument, is that because the roster was not formally stricken after April 1979 and remains unstricken today, all presently existing vacancies must be filled from the 1973 roster in order to comply with state law. That argument is based on consideration of occurrences which took place after entry of the district court order of June 23, 1978 and may not be considered on review. In short, the validity of any new plan to fill vacancies occurring subsequent to May 1978 was never before the district judge and this court lacks jurisdiction to consider such a plan. We note that the district judge has retained jurisdiction of this case and any new plan for filling vacancies may of course be brought to his attention.
 
 
 30
 The only matter before us and the boundary of our decision is the validity of the approval of the plan to fill vacancies existing in May 1978 from the 1973 eligibility roster and then the striking of that roster. Because the plan approved by the district court in June 1978 did include filling all vacancies existing at that time before striking the 1973 roster, we hold that the district judge complied with state law and that the 1973 list may validly be stricken.
 
 III
 
 31
 Intervenors argue that the district court's approval of the striking of the 1973 roster without promoting the 111 intervenors offends equity because the intervenors are innocent of the discriminatory actions which the decree at issue was designed to remedy.[8] According to the intervenors, the equitable issue is "how the majority billets shall be allocated: according to the 1973 roster of those who qualified, bona fide, pursuant to the established procedures, or from another roster, prepared according to rules which, from the standpoint of the intervenors, were made up in the middle of the game." The relief sought by the intervenors is the maintenance of the 1973 roster until all of the intervenors have been promoted.
 
 
 32
 Alternatively, intervenors argue that the 1973 roster should have been maintained until it was superseded by a "valid and lawful" new roster. Although a 1979 promotional roster now exists pursuant to a new written examination given in late 1978, the district court decision from which this appeal is taken was made before a new roster was in existence. According to the City's plan approved in June 1978, the 1973 roster would be stricken and no new promotions to sergeant would be made until the new roster was compiled. Intervenors argue that it was unjust to delay appointing sergeants pending the administration of a new examination and the compilation of a new roster, when the existing 1973 roster could have been used. If we find that the district judge abused his discretion in approving the plan to strike the 1973 roster before a new roster was compiled, we must at least require that vacancies occurring prior to the existence of the 1979 roster be filled from the 1973 roster.[9]
 
 
 33
 We have considered the intervenors' equitable contentions and find them to be without merit. The 1973 roster was compiled on the basis of a written examination that both the district court and this court found to be discriminatory and not job-related. The City, aiming to remedy its past unlawful conduct, wanted to make future appointments on the basis of a newly designed examination and roster. Intervenors are in error when they assert that when this court previously required appointments to be made from the 1973 roster, we acknowledged that the 1973 examination was valid for purposes of establishing a rank-ordering among majority applicants. Our earlier opinion simply made clear that the use of the 1973 roster was preferable to appointments "made completely at the discretion of the Police department," a result we noted that the Illinois Municipal Code had been designed specifically to avoid. 549 F.2d at 439. At the same time, we there affirmed the district court's finding that the 1973 sergeant's examination lacked both concurrent and content validity. Faced with a five year old promotional roster that was not only discriminatory but had further been found not to correlate with success on the job, the City was justified if not obliged to plan to abandon its use.[10]
 
 
 34
 Neither do we agree that the district judge abused his discretion by approving a plan to strike the 1973 roster before the new roster was compiled. If the City was of the opinion that the delay in new appointments was not problematic, we cannot say that the judge abused his discretion in deferring to that judgment. Further, we note that in an April 1979 order the district judge did allow promotions to sergeants to be made from the 1973 roster subject to the approval of the court.
 
 
 35
 Of great importance in the district court's assessment of the equities was the undisputed fact that the intervenors were free to take the new examination and compete for a position on the new roster. Far from overlooking the concerns of the intervenors, the district judge expressed his determination that no intervenor be prohibited from taking the 1978 examination. He stated, for example, that if "there is an age problem with some of these men, as to whether they would be permitted to take the new examination, we will address whether they should receive some form of dispensation. . . ."[11]
 
 
 36
 In Regents of the University of California v. Bakke, 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978), on which intervenors based their motion for reconsideration, the Supreme Court specifically distinguished Bakke, where there were "approved preferential classifications in the absence of proved constitutional or statutory violations" from cases such as this one where a court is fashioning a remedy after such a violation has been found.
 
 
 37
 The mandate of this court shall issue forthwith.
 
 
 38
 Affirmed.
 
 
 
 *
 The Honorable Harold A. Baker, United States District Judge of the Central District of Illinois, is sitting by designation
 
 
 [1]
 The Government's case was subsequently consolidated with three private suits, two of which were already before the district court and a third which was initially brought against the Secretary of the Treasury and the Office of Revenue Sharing in the District of Columbia district court
 A previous opinion by this court on other facets of this case appears at 549 F.2d 415 (1977). Previous district court opinions are reported at 411 F.Supp. 218 (N.D.Ill.1976); 395 F.Supp. 329 (N.D.Ill.1975); and 385 F.Supp. 543 (N.D.Ill.1974).
 
 
 [2]
 The parties disagree as to whether the number 400 represents the usual or the maximum number of appointees from a promotional roster
 
 
 [3]
 The use of that ratio is not challenged here
 
 
 [4]
 Temporary sergeants, appointed between November 1974 and January 1977 at the discretion of the City rather than on the basis of the 1973 roster, did not receive permanent positions pursuant to this court's directive that vacancies be filled from the 1973 promotional roster
 
 
 [5]
 The intervenors count only the period from January 1977 to May or June 1978
 
 
 [6]
 The district judge stated:
 The promotional plan of the defendant City of Chicago, et al., regarding police sergeants, which was filed on May 19, 1978, is now approved in all respects. . . . There really have been no facts here that were contested. But to the extent that the ruling on the pending motion (of intervenors to enjoin the striking) requires findings of fact and conclusions of law, the statements that I have made this morning will stand as those findings and conclusions under Rule 52(a) of the Federal Rules of Civil Procedure. (June 23, 1978).
 
 
 [7]
 Prior to our decision in Hennessey v. Schmidt, this court dismissed appeals from Rule 59 denials as unappealable. In Hennessey, we explained that although an appeal is not permitted from the denial of a motion for reconsideration under Rule 59, review of the denial may be considered in the appeal from the decision for which reconsideration was requested
 
 
 [8]
 It is not disputed here that the intervenors have no legal entitlement to promotion as a result of their positions on the 1973 roster
 
 
 [9]
 The intervenors also question the validity of the 1978 written examination on which the 1979 roster is based. The status of that examination or roster is not before us because that examination did not exist at the time of the district court decision from which this appeal is taken. We note, however, that in an earlier decision arising from this same lawsuit in which the issue before us was the entry-level patrolman's examination rather than the sergeant's examination, we held that the Civil Service Commission had wide discretion under Illinois law to determine whether an eligibility list should be stricken, and that authorization to strike the list was properly granted irrespective of the validity of the succeeding examination. 567 F.2d 730, 734 (7th Cir. 1977)
 
 
 [10]
 On March 27, 1979, the district judge stated that his approval of the City's promotional plan was based on the promised compilation of a new roster. He made clear that he would not permit the City to appoint sergeants by the method "discredited and rejected by the Court of Appeals."
 
 
 [11]
 Apparently no age problem existed