UNITED STATES of America, Plaintiff,

Robert Petit, et al.,
Plaintiffs–Intervenors,

v.

CITY OF CHICAGO, Defendant.

William C. BIGBY, et al., Plaintiffs,

Ann Erwin, et al.,
Plaintiffs–Intervenors,

v.

CITY OF CHICAGO, et al., Defendants.

Nos. 73 C 2080, 80 C 5246.

United States District Court,
N.D. Illinois, E.D.

Oct. 26, 1990.

---

## FINAL MEMORANDUM ORDER

PRENTICE H. MARSHALL, Senior District Judge.

In *United States v. City of Chicago*, 870 F.2d 1256 (7th Cir.1989), Ann Erwin and her colleagues persuaded the Court of Appeals for this circuit that I erred when I denied their motion to intervene in *Bigby v. City of Chicago*, 80 C 5246. They sought to challenge the standardization of scores on the 1987 lieutenants' examination which had a disparate impact on the black sergeants who took the examination. On remand I permitted Erwin, et al. to intervene in the *Bigby* case.

Thereafter, I permitted Robert Petit, et al. to intervene in *United States v. City of Chicago*, 73 C 2080 for the purpose of challenging the standardization of scores on the 1987 sergeants' examination which had a disparate impact on black males and all females who took the examination. The Petit intervenors are represented by the same lawyer who represents the Erwin intervenors.

On December 12, 1989, Magistrate Elaine E. Bucklo filed comprehensive reports and recommendations in 73 C 2080 and 80 C 5246 regarding motions to strike and dismiss certain of the allegations of the Petit and Erwin complaints. I approved those reports and recommendations in their entirety and dismissed certain of the intervenors' claims and ordered others to be answered by defendants. Those were not final orders. Rule 54(b), F.R.C.P.

In July of this year the City of Chicago advised the court and the parties that it was undertaking "voluntary affirmative action" with respect to promotions to the ranks of sergeant and lieutenant. The precise dimensions of the voluntary affirmative action were not spelled out in the notice. The city merely stated that it "planned to make promotions at each rank, including sergeant and lieutenant, at proportions for minorities and women at a level of twenty percent above the composition of those groups in the relevant lower ranks, with two exceptions." Notice to Court, filed July 16, 1990.

The standardization of the test scores for promotion to sergeant and lieutenant provoked some fresh (i.e., nonintervenor) litigation. *Henry F. Gralak, et al., v. City of Chicago, et al.* 89 C 6247 (originally assigned to Judge Plunkett); *Ann Erwin, et al. v. City of Chicago, et al.*, 90 C 950 (originally assigned to Judge Rovner but transferred to Judge Williams). The voluntary affirmative action undertaken by the city has provoked more fresh litigation. *Robert Petit, et al. v. City of Chicago, et al.*, 90 C 4984 (assigned to Judge Hart); *Fraternal Order of Police, Lodge 7 v. Richard M. Daley, Mayor, etc., et al.*, 90 C 5203 (assigned to Judge Nordberg). The fresh *Erwin* and *Petit* cases have been brought by the same lawyer who represents them as intervenors in these actions.

In addition, counsel for Erwin moved to join Kenneth Flaxman and Stephen Seliger as defendants in the *Bigby* case (80 C 5246) alleging that they, as counsel for Bigby, et al., conspired with the City to standardize unlawfully the lieutenant test scores. I denied the motion. Undaunted, counsel joined Flaxman and Seliger in 90 C 950.

In *United States v. City of Chicago*, 870 F.2d 1256, 1259, the court, while ordering that Erwin, et al. be permitted to intervene in the *Bigby* case, observed that I am not an ombudsman of the Chicago Police Department and that this litigation strikes a "parallel to the interminable equity proceedings mocked in Dickens' novel *Bleak House*." *See also United States v. City of Chicago* (appeal of the Fraternal Order of Police) 894 F.2d 943, 948 (7th Cir.1990) (Easterbrook, J. concurring tracing the political history of the presidency of the United States and the mayoralty of the City of

Chicago during the course of this litigation.)

Defendants requested me to accept reassignment of the fresh cases (involving standardization of scores and voluntary affirmative action) as related to 73 C 2080 and 80 C 5246. In light of the admonitions of the Court of Appeals I declined to do so.

Intervenors Petit, et al. and Erwin, et al. disagree with the orders approving the recommendations of Magistrate Bucklo and dismissing many of the allegations of their complaints. Thus, although their counsel persuaded the Court of Appeals that they were entitled to intervene in these actions, on August 16, 1990 the Petit and Erwin intervenors moved to dismiss their intervening complaints without prejudice pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure, so that they could refile them before different judges as amendments in their fresh complaints. The Bigby plaintiffs and the City objected to the motions; the United States did not oppose them. When the motions were was first presented I denied them.

But I have reflected. I will not entertain the fresh complaints challenging the standardization of test scores and the voluntary affirmative action undertaken by the City. Consequently, all of the present controversies will not be resolved in the actions before me. Furthermore, Messrs. Flaxman and Seliger are not defendants before me, although they are in one of the fresh actions. So that controversy will not be resolved here. Consequently, on my own motion I announced I would reconsider the motions of the Petit and Erwin intervenors to dismiss voluntarily their complaints. They then filed a supplement to their motions.

The matter was heard in open court. Counsel for the Petit and Erwin intervenors urged that I dismiss the totality of both intervening complaints without prejudice. I stated unequivocally that I would not do that; that only the allegations which had survived the earlier motions to dismiss would be dismissed without prejudice. Counsel for intervenors made clear her understanding of that, and persisted in the Rule 41(a)(2) motions.

Recently the Court of Appeals for this circuit in *Villegas v. Princeton Farms, Inc.*, 893 F.2d 919 held that it is an abuse of discretion for a district court to permit a voluntary dismissal under Rule 41(a)(2) with regard to claims which have been adjudicated. But, in my judgment, it is not an abuse of discretion if I permit the intervening plaintiffs to dismiss without prejudice claims which survived the motions to dismiss.

The decrees in these two cases have served their purposes. The quarterly report of the Chicago Police Department filed October 5, 1990 shows a police department of males and females, blacks, caucasians, and hispanics. There have been no complaints of gender, race or ethnic discrimination in entry level hiring since 1975. While there are pending complaints of discrimination in promotions to sergeant and lieutenant they are essentially those of white officers alleging that blacks and hispanics are now receiving favored treatment. Today's controversies are 180 degrees from those of 1973.

■ Accordingly, in *United States v. City of Chicago*, 73 C 2080, a final judgment will be entered dismissing without prejudice the claim of plaintiff-intervenors Robert Petit, et al. challenging, under the equal protection clause of the fourteenth amendment to the Constitution of the United States, the statistical standardization of scores on the 1987 sergeant promotion test and dismissing with prejudice those claims of plaintiff-intervenors Robert Petit, et al. contained in paragraphs 19–f, 20, 23, of the intervenors' first amended complaint and those claims based upon the due process clause of the fourteenth amendment to the Constitution of the United States and those claims under 42 U.S.C. §§ 1981, 1985(3) and 1986 and the pendent state law claim contained in Count II of the intervenors' first amended complaint.

In *Bigby v. City of Chicago, et al.*, No. 80 C 5246 a final judgment will be entered dismissing without prejudice the claims of plaintiff-intervenors Ann Erwin, et al. chal-

lenging under the equal protection clause of the fourteenth amendment to the Constitution of the United States the statistical standardization of scores on the 1987 lieutenant promotion test and the claims made under 42 U.S.C. §§ 1985(3) and 1986, and dismissing with prejudice all of the paragraphs of Count I of the first amended complaint except paragraphs 1 through 23, 24–B and 30–38 and all of the claims of plaintiff-intervenors Ann Erwin, et al. made under the due process clause of the fourteenth amendment to the Constitution of the United States and under 42 U.S.C. § 1981 and the pendent state law claim contained in Count II of the intervenors' first amended complaint and their claim for punitive damages.

The motion of intervenor-plaintiffs Robert Petit, et al. for leave to file a second amended complaint in 73 C 2080 is denied.

The objections of plaintiff-intervenors Ann Erwin, et al. to the report and recommendation of Magistrate Elaine E. Bucklo denying their motion to disqualify Kenneth Flaxman and Stephen Seliger in 80 C 5246 are overruled and the report and recommendation is approved in all respects.

Defendant City of Chicago and its Police Department are relieved of the obligation of filing quarterly reports.

There remain for consideration in 73 C 2080 certain objections filed to the determinations of ineligibility for adjustment of seniority and back pay under the consent decree entered June 7, 1989. The consent decree was affirmed by the Court of Appeals July 24, 1990. The objections are now ripe for ruling.

Objections to the proposed consent decree were heard by the court prior to the approval and entry of the decree on June 7, 1989. Thereafter, under the terms of the decree, persons who believed themselves entitled to be included in the four classes of officers entitled to tenders of awards of compensation for lost earnings and adjustments in their seniority dates and all benefits derived therefrom, were entitled to make claim with the United States and the City of Chicago for inclusion in the classes. Many persons did so. Their claims were considered; some were granted and others were rejected. The decree provided that thereafter those who were rejected could file objections with the court and 42 persons have done so.

Their claims are in writing along with the rationales for their denial. The City and the United States have filed written submissions. On October 5, 1990 a hearing was held in open court at which each claimant was afforded the opportunity to present orally his or her claim. Fourteen elected to do so; 28 did not. Failure to appear was *not* a waiver of a claim. We have now reviewed the terms of the consent decree and the attachments thereto and the fact sheet distributed by the City and the United States in regard thereto; the written claims; the responses thereto; the submissions made by the City and the United States; and the oral submissions made by the several claimants who appeared on October 5, 1990.

■ Appendix A to the consent decree includes "females on the 1972 policewoman eligibility list who were subsequently hired or reclassified as police officers and who successfully completed their probationary period, and females who were employed prior to March 24, 1972 as police women or matrons and subsequent to that date were reclassified as police officers." A number of females who are not listed on Appendix A claim that they should be.

Claimants Doris J. Bullock Washington, Stephanie Kimbrough, Tonita L. Marshall, Diane J. Olsen, and Mikie E. Samuel all meet the literal terms of the consent decree. They were on the 1972 policewoman eligibility list, they were subsequently hired as police officers and they successfully completed their probationary period. The City and the United States assert that they were not intended beneficiaries of the consent decree because they were not hired until well into the 1980's when it was unlikely that their failure to be hired was related to discrimination by the city. They also assert that four of the five did not take the 1975 "unisex" patrol officer examination and that one (Ms. Marshall) took and failed it. Finally they assert that Ste-

phanie Kimbrough was called off the 1972 list on February 28, 1976 but did not appear.

A consent decree is an agreement. Like all agreements this one is imperfect. These claimants meet the terms of the decree. There was no requirement in the decree that they take or pass the 1975 test. In the case of Ms. Kimbrough, the denial of her claim by the City on March 23, 1990 was not predicated upon her failure to respond to a call on February 28, 1976. That reason was not asserted until the United States filed its response with the court on June 26, 1990. It appears from the record that the call was sent to the wrong address. There is no evidence that Ms. Kimbrough ever received it.

The terms of this consent decree should not be altered through construction or the alleged intent of the parties. Women were prohibited from being police officers in Chicago prior to this litigation. These women sought to become police officers prior to this litigation. They have subsequently succeeded. They meet the terms of the decree and should be included in appendix A.

■ Another group of ten women were rejected because, it was asserted by the City, they had not passed the 1972 policewomen examination and, accordingly, were not on the 1972 police women's eligibility list. Two of these, Cleon L. Sykes (whose name in 1972 was Cleon Grantlen) and Francesca Williams allege that they were employed by the Chicago Police Department as community service aides in March 1970. To retain their jobs they were required to take and pass the 1972 policewomen's examination. They were notified at roll call that they had passed the examination and were retained as community service aids until they were reclassified as police officers. Both successfully completed their probationary period.

The City and the United States rejected the claims of Sykes and Williams because they were not on the 1972 list. I am persuaded by the evidence which they have submitted that they took and passed the 1972 test and should be included in Appendix A.

■ The situations of Carmen Y. Adcock, Christine A. Donchez, Joyce P. Gordon, Darlene Hudson, Roberto Jackson, Carol A. McLaurin, Patricia A. Mesa, and Commletha Washington, are different. There is no evidence that any of these women passed the 1972 examination. Ms. Donchez argues that she should be excused from that requirement because the 1972 examination was "segregated," it was open only to women and women were not permitted to take the standard police officers' test in 1971. That argument is one which might have been addressed to the terms of the consent decree itself. It is not an argument available now to avoid the requirements of the consent decree.

The remaining seven women in this group allege that they took the 1972 test. There is, however, no evidence that they passed it and that is a criterion for inclusion in Appendix A.

There remain a number of claims which go to the terms of the consent decree. Carole Allen, Alberta Radford Gordon, Jane Kelley, Joanne E. Ryan, Patricia A. Stube and Sharon W. Urbon repeat objections filed by them and Ann Erwin before the entry of the consent decree. I have already considered and rejected these objections. They should not be reconsidered at this time.

■ Five women who failed to meet the consent decree's criteria of hire or promotion (Appendices A and C) filed claims. They do not factually dispute their failure to meet the criteria. It is too late now to reconsider the criteria. Thus we reject the claims of Frances T. Jamen and Lene Washington (who were never hired as police officers) and Rita J. Kaufman, Lillian McGrath, and Kathleen L. Wagner (who do not meet the sergeant promotion criterion).

■ Three women assert claims that arose prior to March 24, 1972 when Title VII became applicable to municipalities. This litigation was predicated upon Title VII and the consent decree was entered on that basis. Accordingly, the claims of Ju-

dith Troop, Rita J. Kaufman and Lillian McGrath must be rejected.

A number of males who do not meet the criteria of hire or promotion (Appendices B and D) have filed claims. Troy Alexander, Milby Dow, Jr. and John D. Lewis have never been hired as police officers. Harry Holmes and Edward Record were hired after the December 31, 1978 cut-off for minority male hiring claims. Jesse Richardson and Floyd Henderson were not promoted to sergeant and therefore do not meet one of the requirements for inclusion in Appendix D. Albert E. Stimage was promoted to sergeant but he was not one of the first 38 minority males promoted after the effective date of Title VII and thus was not entitled to be included under Appendix D of the consent decree.

Mr. Stimage also objects to the inclusion under Appendix D of the consent decree of persons who were temporary sergeants. Some of those included in Appendix D were, at one time, temporary sergeants. However, they were later permanently promoted in accordance with the decisions of this court and the Court of Appeals.

■ Five non-minority males, Richard M. Aztlan, Robert G. Hacker, John M. Kucharski, Anthony Maslanka and Bernard Ziobro, object to their exclusion from Appendix B to the consent decree. The litigation was brought to remedy discrimination against blacks, hispanics and women. The consent decree was agreed to and approved by the court on that basis. Other alleged discriminations are not embraced in this litigation. These claims must be rejected.

■ Finally, Billy G. Locke and Donald E. Martin assert claims for earlier seniority dates than those they were assigned under Appendix B. Both complain that the relief they have received does not take into account the fact that they took the 1968 patrolman's examination. Neither alleges that his adjusted seniority date is out of line with the dates assigned to other minority males who were hired on the date that they were hired. Thus their objections go to the method for identifying beneficiaries of the consent decree and for assigning seniority date adjustments under the de-

cree. Those objections were considered prior to the approval of the consent decree and should not be reconsidered.

■ Furthermore, any hiring delays prior to March 24, 1972, the effective date of Title VII for municipalities, are beyond the scope of this litigation. Therefore, no seniority relief is possible under this decree prior to March 24, 1972.

In summary, then, the claims of Doris J. Bullock Washington, Stephanie Kimbrough, Tonita L. Marshall, Diane J. Olsen, Mikie E. Samuel, Cleon L. Sykes and Francesca Williams are granted and they are ordered to be added to Appendix A and to receive tenders of awards of compensation for lost earnings and adjustments in their seniority dates and all benefits derived therefrom in accord with the terms of consent decree. The claims of Carmen Y. Adcock, Troy Alexander, Carole Allen, Richard M. Aztlan, Christine A. Donchez, Milby Dow, Jr., Alberta Radford Gordon, Joyce P. Gordon, Robert G. Hacker, Floyd A. Henderson, Jr., Harry Holmes, Darlene J. Hudson, Roberto Jackson, Frances T. Jamen, Rita J. Kaufman, Jane Kelley, John M. Kucharski, John D. Lewis, Jr., Billy G. Locke, Donald E. Martin, Anthony Maslanka, Lillian McGrath, Carol A. McLaurin, Patricia A. Mesa, Edward Record, Jesse Richardson, Joanne E. Ryan, Albert E. Stimage, Patricia A. Stube, Judith Troop, Sharon W. Urban, Kathleen L. Wagner, Commletha Washington, Lene Washington, and Bernard Ziobro are denied.

This litigation was initiated in 1970 by Renault Robinson, a black Chicago police officer, and the Afro–American Patrolmen's League. *Robinson, et al. v. Conlisk, et al.*, 385 F.Supp. 529 (N.D.Ill.1974). Mr. Robinson and the League alleged that the Chicago Police Department discriminated against black males in hiring, promotion, assignment and discipline in violation of the equal protection clause of the fourteenth amendment. Mr. Robinson's outspokenness was rewarded by multiple trumped-up disciplinary charges, crude, vulgar, threatening harassment and an assignment to guard duty patrol of the park-

ing lot of the Central Police Headquarters. For three years Mr. Robinson's case did not move.

In 1973, Mr. Robinson was joined by Tadeo Robert Camacho and others and the United States of America in two actions which alleged police department discrimination against hispanics and women as well as blacks.

When I was sworn in as a judge of this court on August 6, 1973 the *Robinson* case was reassigned to me as part of my original calendar. Thereafter 73 C 1252 and 73 C 2080 were reassigned to me as related to *Robinson* and in April 1974 the three cases were consolidated for all purposes. *Robinson, et al. v. Conlisk, et al.*, 385 F.Supp. 540 (N.D.Ill.1974).

Immediately thereafter I set the cases for an evidentiary hearing on plaintiffs' motions for a preliminary injunction (which were consolidated with the merits, Rule 65(a)(2) F.R.C.P.). I issued an opinion and preliminary injunction after seventeen days of trial, on November 7, 1974. *United States v. City of Chicago*, et al., 385 F.Supp. 543 (N.D.Ill.1974). The preliminary injunction became the standard of relief throughout this litigation. An all male force was opened to women and the Department was enjoined from using hiring and promotional tests and standards which discriminated against blacks and hispanics. Thus in slightly more than a year the case was preliminarily resolved.

But, the "good news" was short lived. First, the City reneged on a hiring settlement agreement which necessitated further injunctive proceedings. *United States v. City of Chicago*, 395 F.Supp. 329 (N.D.Ill. 1975). Because the City used revenue sharing funds to support its discriminatory hiring and promotion practices, the secretary of the Treasury was enjoined from disbursing those funds to the City, following another lengthy hearing. *Id.* (In passing, the impoundment of $76,000,000 in revenue sharing funds was the single most effective remedy in the case. It got the attention of the City's power structure.)

Then, further evidentiary hearings were demanded by the City regarding the is-suance of a permanent injunction. *United States v. City of Chicago, et al.*, 411 F.Supp. 218 (N.D.Ill.1976). There have been at least fifteen appeals, *see, e.g., United States v. City of Chicago, et al.*, 525 F.2d 695, 534 F.2d 708, 549 F.2d 415, 567 F.2d 730, 631 F.2d 469, 648 F.2d 1110, 663 F.2d 1354, 766 F.2d 1053, 796 F.2d 205, 853 F.2d 572, 869 F.2d 1033, 870 F.2d 1256, 894 F.2d 943, 897 F.2d 243, 908 F.2d 197, with each appeal being heard by a different panel of the court of appeals with the opinion frequently written by a different judge.

In 1977 the City administered a lieutenant's promotion examination which was invalid because of its disparate impact on blacks and in 1979 it administered another invalid sergeant promotion examination. Indeed, the current controversies over standardization of test scores and voluntary affirmative action stem from 1987 promotion tests which had disparate impacts on blacks and females.

While these actions have lasted a generation and have seen five Presidents and six Mayors (thirteen Court of Appeals judges and one district judge) they should not be likened to the interminable equity proceedings in *Bleak House*. This institutional litigation has worked. The Chicago Police Department is a better place today than it was in 1970.

Finally, a word about the lawyers. The many reported decisions in this litigation recite their names. With one exception, each has represented his or her client in the highest traditions of the Bar. Many donated their services (despite the attorney's fee provisions of the applicable civil rights acts). Every step of the journey has reinforced my belief in the truth of Harrison Tweed's tribute:

> I have a high opinion of lawyers. They are better to work with or play with or fight with or drink with than most other varieties of mankind.

It has been a pleasure to work with you, women and men of the Bar. May we meet again on another field.