CUMMINGS, Circuit Judge.
Sixteen years after the district court first ruled that the Chicago Police Department had discriminated against women, blacks, and Hispanics in violation of civil rights laws, the City of Chicago (“the City”) has yet to make whole the victims of its unlawful discrimination.
In 1976, in a case brought against the City by the United States of America, District Judge Prentice H. Marshall held that the Chicago Police Department had knowingly and systematically discriminated in its employment practices against women, blacks, and Hispanics in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 1981 and 1985, the State and Local Fiscal Assistance Act of 1972, and the Fourteenth Amendment to the United States Constitution. United States v. Chicago, 411 F.Supp. 218 (N.D.Ill.1976).
On the basis of its finding of unlawful discrimination, the district court enjoined the City from committing further acts of discrimination and ordered it to “make whole by an award of back pay * * * all identified victims of the Chicago defendants’ unlawful discriminatory practices and, to the extent appropriate, to order retroactive seniority adjustments for all identified victims of the Chicago defendants’ unlawful discriminatory promotion practices.” Id. at 251. This court affirmed in part (as to sexual and racial discrimination in violation of Title VII and the nondiscrimination provision of the State and Local Fiscal Assistance Act), reversed in part (as to unconstitutional racial discrimination and certain quotas not at issue in this appeal), and remanded for further proceedings as to unconstitutional sexual discrimination. United States v. Chicago, 549 F.2d 415 (7th Cir.1977).
I. Facts
A. The Consent Decree
In accordance with the district court’s order for remedial back pay and retroactive seniority adjustments for the plaintiffs,[1] the parties submitted a proposed consent decree to the district court on April 4,1988, following twelve years of protracted litigation, negotiation, and discovery.
The consent decree established that the City would deposit $9,229,212 into a back-pay fund earning a minimum rate of six percent interest. The decree identified each person entitled to back pay and ad *328 justed seniority, and provided the formula' for determining the amount of back-pay awards. The formula estimates a plaintiffs lost earnings based upon 1) the person’s actual hiring or promotion date and what that date would have been absent unlawful discrimination and 2) the person’s estimated job earnings during the period of delayed hiring or promotion.[2]
In addition to the back-pay awards, the consent decree also entitled plaintiffs to “adjustments in their seniority dates and all benefits derived therefrom.”[3] As payment for the retroactive seniority credit, the decree directed the City to deduct employee contributions from plaintiffs’ back-pay awards and to provide employer contributions from a source other than the plaintiffs’ back-pay fund.[4]
Notice of this proposed consent decree was distributed. All interested parties received the opportunity to respond to the decree in writing and in person at a fairness hearing held on June 5, 1989. Two days after the fairness hearing,- the district court approved and entered the consent decree. On October 26, 1990, 752 F.Supp. 252 (N.D.I11.), the court issued its Final Memorandum Order addressing the objections of 42 individuals to the consent decree and ordering disbursement of funds to the plaintiffs.
B. The Dispute
Ten days after the district court’s final order mandating the- disbursement of funds, the court was informed of a dispute between the parties to the consent decree and the Retirement Board of the Policemen’s Annuity and Benefit Fund of the City of Chicago (“the Board”) as to the amount of contributions due to the pension fund.
The City and the United States entered into the consent decree with the understanding that the plaintiffs’ pension contributions would equal approximately 9% of the plaintiffs’ back-pay awards. Under the consent decree, the City reimburses plaintiffs only for estimated lost earnings, which take into account estimated earnings at other jobs during the period of delayed hiring or promotion. Thus the City and the United States both believed that the plaintiffs’ required contributions would not be based upon the full salaries that the plaintiffs would have earned absent discrimination. Instead the parties to the consent' decree believed that the plaintiffs’ pension contributions would be based on only that portion of the salaries remedied by the *329 back-pay award — namely, the estimated amount of wages the plaintiffs lost due to discrimination.
The Board, however, would not agree to afford full retroactive seniority credit unless contributions were made for the full salaries that the plaintiffs would have received absent discrimination. The Board rejected the parties’ proposition that employee contributions be assessed only on the back-pay awards — the Board argued that this amount would not fully fund the pension plan for the level of retroactive benefits sought. According to the Board, it may only grant full seniority credit after receiving full employee contributions based on full annual salary. The Board therefore demanded that it receive the same amount of contribution that each plaintiff would have been required to make had that person been employed without discrimination during the period for which retroactive seniority was sought, and interest thereon.
The parties agree that if plaintiffs must contribute the same amount that they would have been required to contribute absent discrimination, they will be required to make a contribution from the back-pay fund of $1.5 million more than that required under the United States’ and the City’s calculation. Pursuant to the Board's demand, many plaintiffs would be required to pay 20% of their back-pay awards to assure full retroactive pension benefits and some would be required to pay between 50% and 100%, or even in excess of 100%, compared to 9% under the United States’ and the City’s formula. The district court later wrote that the consequences of the Board’s position would have been “catastrophic” to the back-pay settlement between the City and the United States. The court wrote:
It was clear to the court that had the demands of the Board been known at the time the consent decree was proposed, notice and hearings held thereon, there would havé been an outpouring of objections and the likelihood was that the Decree would not have been approved. Thus, the Board’s demand went to the very heart of the consent decree.
Opinion and Order at 5, 1991 WL 192213 (Sept. 25, 1991) (footnote omitted).
C. Proceedings in the District Court
Because of the drastic and unforeseen consequences of the Board’s demand, the City filed a Motion To Alter or Amend Judgment or For Modification of the consent decree, with which the United States concurred. That motion sought leave from the court for the City not to deduct pension contributions from the back-pay awards of those victims of discrimination whose awards would be exhausted by the contributions demanded by the Board. The City suggested that those plaintiffs be given the option of whether or not to make the required contributions and receive retroactive seniority. The United States filed an additional motion to vacate the consent decree and to vacate those portions of the final memorandum order relating to back pay and seniority since it contended that the decree would no longer satisfy its remedial objectives because of the Board’s demands. The City strongly opposed this motion.
The district court suggested that the parties pursue another option. At the time the dispute between the parties and the Board arose, the Board was not a party to this action. The district court therefore suggested that the Board be joined as a party so that its demands could be adjudicated. Consequently, on May 15, 1991, the district court granted the United States’ motion, filed March 4, 1991, to join the Retirement Board as a defendant pursuant to 'Fed. R.Civ.P. 19(a). Judge Marshall found that
in' the Board’s' absence complete relief cannot be accorded among those already parties and those in whose behalf this action was brought by the United States. The Court further finds that the Board claims an interest relating to the subject matter of the action and is so situated that the disposition of the action in the Board’s absence may impede the Board’s ability to protect its interest and may leave the persons in whose behalf this action was brought subject to a substantial risk of incurring inconsistent obli *330 gations by reason of the Board’s claimed interest.
Order at 1-2 (May 15, 1991).
The United States then filed a supplemental complaint naming the Retirement Board and its officials (hereinafter addressed collectively as “the Board”) as defendants. Although the complaint did not allege that the Board illegally discriminated in any way, it alleged that the contributions sought by the Board were not required by law and would “fatally compromise” the goal of the consent decree to make whole the victims of discrimination. The complaint sought an injunction requir-. ing the City to pay the pension fund 9% of each beneficiary’s back-pay award, and re: quiring the Board to accept that 9% contribution and to recognize full retroactive seniority rights for each beneficiary.
On June 19, 1991, the United States filed a motion for summary judgment which was subsequently granted. Opinion and Order 1991 WL 192213 (Sept. 25, 1991). The court relied on the language of the Illinois Policemen's Benefit and Annuity Fund Act, Ill.Rev.Stat. ch. 108½, 11 5-101 et seq,, to hold that the contributions sought by the Board were not required by law, that the Board could only require the beneficiaries to contribute 9% of their back-pay awards, and that the Board could not demand back interest from the beneficiaries. The court ordered the Board to accept 9% of each beneficiary’s gross back pay from the City and to recognize full retroactive seniority rights for each beneficiary. At the same time," with respect to the United States’ March 19 motion to vacate the consent decree, the district court denied the motion “without prejudice .to its renewal in the event that this order is appealed and not affirmed.”
From the district court’s September 25, 1991, final Memorandum Opinion and Order, 1991 WL 192213, the Board has taken the present appeal. After filing its notice of appeal in this Court, the Board filed a motion for a stay pending appeal. That motion was denied by the district court on November 15, 1991, 1991 WL 249740, and by this Court on December 16, 1991. The City sent the back-pay awards to the plaintiffs on January 2, 1992.
II. Analysis
The City and the United States agree that under the consent decree the Board should provide full seniority credit in exchange for 9% of plaintiffs’ back-pay awards. The Board was not a party to that decree, and was not found, or even alleged, to have discriminated against the plaintiffs. The Board strenuously objects to any requirement which forces it to bear the financial burden of remedying the City’s discrimination. It therefore asserts that it should not be required to accord retroactive seniority credit without receiving the full measure of pension contributions to which it would have been entitled if the plaintiffs had been employed without discrimination for the full period of retroactive seniority, plus interest.
In general, a judgment or decree among parties to a lawsuit does not bind a third party who has not been made a party to the litigation. Martin v. Wilks, 490 U.S. 755, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989).[5] Consequently, “parties who choose to resolve litigation through settlement may not dispose of the claims of a third party, and a fortiori may not impose duties or obligations on a third party, without that party’s agreement.” People Who Care v. Rockford Bd. of Educ., 961 F.2d 1335, 1337 (7th Cir.1992) (quoting Firefighters Local 93 v. Cleveland, 478 U.S. 501, 529, 106 S.Ct. 3063, 3079, 92 L.Ed.2d 405 (1986)). See Laycock, Consent Decrees Without Consent: The Rights of Nonconsenting Third Parties, 1987 U.Chi.L.F. 103.
A. The Scope of the Board’s Entitlement
The district court found that the Board had no entitlement to collect contributions based on the full salaries plaintiffs would have received but for discrimination because the plaintiffs did not receive pay *331 ment of that full annual salary. However, the Board asserts that the Policemen’s Annuity and Benefit Fund Act of the Illinois Municipal Code, Ill.Rev.Stat. ch. 108½, ¶¶ 5-101, et seq. (“the Illinois Act”), legally entitles it to collect contributions based on an employee’s full annual salary in return for full seniority credit. Although the Illinois Act does not explicitly address this issue, the Act’s provisions support the Board’s argument.
The pension fund is supported by deductions of a fixed percentage of payments of annual salary made to police officers, Ill. Rev.Stat. ch. 108½, ¶¶ 5-169, 5-114, and by contributions made by the City concurrent with each such deduction. Id. ¶ 5-169. The City’s contribution derives from an annual tax “sufficient for the purposes of the fund” as determined by the Retirement Board, but the total annual amount of employer contributions assessed on the City may not exceed twice the total amount of the employees’ required contributions. Id. ¶ 5-168.
Two statutory provisions referred to by the Board suggest that the Illinois Act does not contemplate granting full seniority benefits without full pension contributions to the fund from either the employee or the City on behalf of the employee.
Paragraph 5-172 assures full pension benefits to police officers who receive duty disability benefits instead of salary. But rather than relinquish the employee’s ordinary pension contribution during the period of the employee’s disability, the City must pay into the pension fund the amount normally deducted from the police officer’s salary, as well as the city’s concurrent contribution.
Similarly, in Paragraph 5-175.1, the Act requires full contribution in order to receive full benefits. That paragraph directly addresses the granting of retroactive pension benefits to remedy a specific instance of discrimination. Prior to October 1, 1974, female police officers received a lesser annuity than male police officers, but were required to make lesser contributions into the fund. Paragraph 5-175.1 prospectively remedies the disparity and permits female police officers to obtain full retroactive benefits, but only if they, or their employer,[6] contribute to the fund the necessary additional amounts for the period prior to October 1974, plus interest.
We accept the Board’s argument that together Paragraphs 5-172 and 5-175.1 reveal a fundamental policy that the Board may not grant full seniority credit without full pension contributions by the employee or on the employee’s behalf. This interpretation naturally comports with the fiduciary duty of the Board to the beneficiaries of the pension fund. To grant full pension benefits without receiving full pension contributions would threaten to deprive all beneficiaries of their rightful share of the benefits. Cf. NLRB v. Amax Coal Co., 453 U.S. 322, 332-334, 101 S.Ct. 2789, 2795-97, 69 L.Ed.2d 672 (1981) (discussing fiduciary duties of pension fund trustees under the federal Labor Management Relations Act). Therefore, we conclude that even in cases of discrimination, the Board is entitled to require full contribution for the seniority credit it provides, whether the employee’s contribution is collected from the employee or the employer.[7] Because the consent decree would not provide full funding of seniority credit, it would prevent the Board from obtaining the full amount of funding to which the Illinois Act legally entitles it.
B.' Alteration of Third Party Entitlement When “Necessary” To Remedy Discrimination
There is an exception to the general rule that parties to a consent decree *332 may not impose obligations on an unwilling third party. The United States correctly observes that under some circumstances, federal courts may require an innocent third party to participate in remedies for illegal discrimination, Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 400, 102 S.Ct. 1127, 1136, 71 L.Ed.2d 234 (1982); International Brotherhood of Teamsters v. United States, 431 U.S. 324, 372-375, 97 S.Ct. 1843, 1873-75, 52 L.Ed.2d 396 (1977). This exception permits third-party entitlements to be altered if a court finds that alteration “necessary to an appropriate remedy for a legal wrong.” People Who Care, 961 F.2d at 1339.
The United States contends that in this case the Board’s acceptance of 9% of plaintiffs’ back-pay awards and allocation of retroactive seniority credit therefor is necessary in order to achieve Title VII’s remedial goals. We disagree. Although the Board’s cooperation is technically necessary to effect the remedy — granting retroactive seniority credit to plaintiffs — the Board’s financial payment for that remedy is not necessary. See General Building Contractors Asso. v. Pennsylvania, 458 U.S. 375, 398-401, 102 S.Ct. 3141, 3154-56, 73 L.Ed.2d 835 (1982) (overruling district court order requiring innocent employers and trade unions to pay for remedial programs and establish training program), Teamsters, 431 U.S. at 375, 97 S.Ct. at 1874 (discussing the reconciliation of competing interests). Even assuming, as we do, that retroactive seniority credit is essential in order to make the plaintiffs whole, and that the Board must afford such credit once it has received appropriate contributions, there is no valid reason that the City cannot and should not bear the cost of remedying its own discrimination. The Board’s decision to seek full pension contributions for the plaintiffs threatens the adequacy of the consent decree and will undoubtedly delay a case which has already been, delayed for too long. Nonetheless, it would be inequitable to reward the City by ruling that these insufferable delays require the assignment of its obligations to an innocent third party.
Because the Board is entitled to receive the same contributions for the plaintiffs’ seniority that it would have received for those plaintiffs absent the City’s discrimination, and because it is not necessary to frustrate the Board’s entitlement in order to remedy discrimination against the plaintiffs, we must reverse the order of the district court and remand the cause for further consideration.
C. Allocation of Additional Pension Costs
Both the City and the plaintiffs argue in this Court that they cannot be required to pay the additional contributions sought by the Board. As a result of our decision then, the district court will be faced with the question of which party must bear the cost of the additional contributions.
Under the consent decree “employee contributions to pension funds” must be paid from the plaintiffs’ back-pay awards. There is an interpretive question as to whether the term “employee contributions” means any contribution which the Board may collect on behalf of employees, or only those contributions for which employees are ultimately responsible for payment. The latter interpretation would beg the question of what contribution employees are required to make in accordance with the consent decree. That question might be answered by the parties’ background understanding that a 9% contribution from the plaintiffs’ back-pay awards would be required, and would' make the plaintiffs whole.
Alternatively, the court might find an interpretation of “employee contributions” as 9% of the plaintiffs’ back-pay awards actually to be a modification of the decree rather than an interpretation. Generally, courts disfavor modification of consent decrees. Money Store, Inc. v. Harriscorp Finance, Inc., 885 F.2d 369 (7th Cir. 1989). The traditional standard is that “[n]othing less than a clear showing of grievous wrong evoked by new and unforeseen conditions should lead us to change what was decreed after years of litigation with the consent of all concerned.” United States v. Swift & Co., 286 U.S. 106, 119, 52 *333 S.Ct. 460, 464, 76 L.Ed. 999 (1932). But a more permissive standard is appropriate in institutional reform litigation. Rufo v. Inmates of Suffolk County Jail, — U.S. —, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992).
Modifying a consent decree over the objection of a party “results in enforcing a bargain different from the one made by the parties.” Kramer, Consent Decrees and The Rights of Third Parties, 87 Mich. L.Rev. 321, 357 (1988). “If consent decrees are contracts, a successful third-party challenge to the legality of a decree should lead the court to vacate the decree. If consent decrees are judgments, the court can vacate but can also modify when warranted by the facts of the case.” Id. at 357. Of course, consent decrees have attributes of both contracts and judgments. Firefighters Local 93 v. Cleveland, 478 U.S. 501, 518, 106 S.Ct. 3063, 3073, 92 L.Ed.2d 405 (1986). If the parties can show that for the purposes of modification, this consent decree functioned more like a judgment than a contract, a modification such as the above is permissible.
This Court has previously stated that “ ‘Consent’ that is no more than knuckling under to the inevitable is more like an adjudication than a contract.” People Who Care, 961 F.2d at 1338. Where the defendant has been adjudged guilty of unlawful racial and sexual discrimination, its duty to make whole the victims of that discrimination is inevitable. Thus the defendant may enter into a consent decree, not because the plaintiffs’ ability to recover is uncertain, but because the parties recognize that the compliance with the law, sooner rather than later, will minimize costs and save both parties time and money. See Easterbrook, Justice and Contract in Consent Judgments, 1987 U.Chi.L.F. 19, 19. As such, modification is appropriate where an unforeseen obstacle warrants revision of the consent decree, and a proposed modification is necessary in order for the decree to remedy adequately the constitutional or legal violation which it was designed to remedy.[8] Modification is particularly appropriate where the alternative is to vacate the decree, collect the disbursed payments and conduct a damages trial that will likely result in a compensatory award similar to the proposed modification.
If the district court concludes that modification would not be appropriate, it may elect to vacate the decree. A class action lawsuit cannot be dismissed by a consent decree or other settlement “without court approval.” Fed.R.Civ.Pro. 23(e). This requirement implies that a court may not approve a consent decree without determining that it meets basic standards of fairness. See Resnick, Judging Consent, 1987 U.Chi.L.F. 43, 87-92.
When the court and the parties believed that plaintiffs would only be required to contribute 9% of their back-pay awards into the pension fund, the district judge found the consent decree to provide a fair remedy to the discrimination against the plaintiffs. The district court suggests that requiring contributions of more than 9% would be unfair to plaintiffs because they would not be fairly compensated by the agreement and because they would not have consented to the decree had they known of the additional $1.5 million cost for retroactive seniority. It is in precisely this type of circumstance that a consent decree may properly be vacated in favor of a court-conducted damages trial or resettlement.
III. Conclusion
The complaint in this case was filed over nineteen years ago. It is frustrating and discouraging to this Court, and surely to the district court and the victims of the City’s discrimination that the process of remedying the City’s wrongs has taken so long. Although this Court has expressed the belief that “this case should be winding down,” United States v. Chicago, 908 F.2d 197 (7th Cir.1990) (citing United States v. Chicago, 897 F.2d 243, 244 (7th Cir.1990)), we cannot put our desire for finality in the way of rendering substantial justice.
*334 We reverse the district court’s order and hold that the Retirement Board cannot be compelled to grant full retroactive seniority benefits to the plaintiffs without receiving full contributions from either the plaintiffs, or the City on their behalf. On remand, the district court must determine which party is required to provide the additional contributions under the consent decree. The court must then address whether that party may be equitably required to pay those contributions. If not, the court should first consider whether it can resolve the issue by modifying the consent decree. If it is unable to do so, the court may vacate the decree and then determine, in a subsequent damages trial, the amount of back pay and seniority credits that the City owes the plaintiffs in order to remedy its previous discrimination against them. The City clearly must provide plaintiffs with the amount of back pay and seniority credit necessary to make them whole. If the consent decree is vacated the district court must determine the total amount and distribution of damages owed by the City, whether that amount is $9 million, $10.5 million, or some other amount, not just which party must pay the $1.5 million at issue in this appeal. Alternatively, the court may permit the parties to draw up a new consent decree.

. The victims of the City’s unlawful discrimination will be referred to as "the plaintiffs" even though this case was actually litigated by the United States of America on behalf of these persons.

. Because of compromises made in obtaining the consent decree, the back-pay award appears to afford plaintiffs less than full back pay. For example, the decree only required that the City pay 55% of the interest due on plaintiffs' back-pay awards, a result that would not have been obtained through adjudication. However, the consent decree also provided favorable seniority credit provisions.

. The consent decree states:
16. SENIORITY ADJUSTMENTS: * * * For an individual determined pursuant to paragraphs 4 and 5 above to be entitled to an adjusted seniority date and benefits, * * * [sjuch adjusted seniority dates and benefits shall thereafter be used or recognized by the City for all purposes for which such dates and benefits would otherwise be used, including for purposes of promotion, demotion and layoff, entitlement and amounts of longevity pay increases, and retirements and pensions.

. The precise language of the decree with respect to compensation for lost pension benefits reads:
2. ADMINISTRATION OF FUND: * * * With respect to every individual designated by this Decree as a recipient of a [back pay] award, and all others who may subsequently be determined in accordance with the procedures provided for herein to be entitled to [back pay] awards, the City shall calculate all appropriate federal, state and local income taxes, employee contributions to pension plans, and any other employee contributions required or permitted by law. These amounts shall be deducted from the gross amount due each individual designated or otherwise determined to receive a tender of an award, and such amounts shall be paid by the City from the Back Pay fund * * * to the appropriate government or other agency upon the acceptance by an individual of the award tender made to him or her. All employer contributions to pension funds, workers’ compensation programs, or' other funds or accounts required by law, shall be paid by the City upon the acceptance of a tender of an award, and such amounts shall not be set off from the individual awards nor in any other way paid from the Back Pay Fund * * *.

. Martin v. Wilks was superseded by the 1991 Civil Rights Act but the parties have not argued that the 1991 Act applies to the case before this court and therefore we need not address questions raised by that Act.

. See ¶ 5-168.1.

. We reject the City’s argument that the Illinois Act prohibits it from paying all or part of the employee contribution as a remedy for unlawful- discrimination by it. Even if that Act were read to prohibit such payment, which we do not read it to do, the City would still have to make such payment if the payment was necessary to remedy its unlawful discrimination. See Missouri v. Jenkins, 495 U.S. 33, 110 S.Ct. 1651, 109 L.Ed.2d 31 (1990). A state statute cannot limit a municipality’s obligation to remedy unconstitutional discrimination, id. at 57, or discrimination in violation of Title VII, California Fed. Savings & Loan Assoc. v. Guerra, 479 U.S. 272, 281.

. Although the Supreme Court has counseled that a modification should not strive to bring a consent decree which provides for remedies beyond those required by the constitution down to the "constitutional floor,” Rufo v. Inmates of Suffolk County Jail, — U.S. —,—, 112 S.Ct. 748, 764, 116 L.Ed.2d 867 (1992), a modification can strive to ensure that a decree remedies the legal violation (Title VII) it was designed to remedy.